IN THE UNITED STATES DISTRICT
COURT DISTRICT OF KANSAS

| | |
|---|---|
| MARGARET FLERLAGE & <br> MARKUS MURRAY <br> individually, and on behalf of all others similarly situated, <br><br> **Plaintiff,** <br><br> v. <br><br> **US FOODS, INC.,** <br> Registered Agent: <br> The Corporation Company, Inc. <br> 112 SW 7th St., Ste. 3C <br> Topeka, KS 66603 <br><br> **Defendants.** | Case No. _____ <br><br> **COLLECTIVE AND CLASS ACTION** <br><br> **JURY TRIAL REQUESTED** |

## COMPLAINT

Plaintiffs Margaret Flerlage ("Flerlage") and Markus Murray ("Murray") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their counsel, bring this Complaint against US Foods, Inc. ("US Foods" or "Defendant"), and hereby state and allege as follows:

## INTRODUCTION

1. Plaintiffs and all other similarly situated employees work or worked for Defendant US Foods as hourly employees and titled as Order Selectors, or other similarly titled position with similar job duties and compensation structures, at Defendant's business location in Topeka, Kansas.

2. Plaintiffs and all similarly situated individuals worked at Defendant's Topeka, Kansas location which is owned and operated by US Foods, Inc.

3. Pursuant to US Foods policies, procedures, and practices, Defendant failed to pay Plaintiffs, and other similarly situated employees, for all hours worked and overtime for all hours

1

worked over 40 in a single workweek in accordance with state/federal law. Plaintiffs, and other similarly situated employees, were required to perform work that was integral and indispensable to their principal activities without compensation. Plaintiffs allege that they and other similarly situated employees were required to have all of their equipment and be ready to attend a pre-shift meeting just prior to the start of their scheduled shift time. Specifically, Plaintiffs and similarly situated employees performed the following uncompensated tasks:

    a. Plaintiffs and similarly situated employees typically arrived approximately fifteen to twenty minutes prior to their scheduled start time in order to complete tasks necessarily required by Defendant to be performed prior to their scheduled shift. During this unpaid time period preceding their scheduled start time, Plaintiffs and the putative class members were required to go to their lockers to obtain their gloves, audio headset unit, travel to the area in the back of the workplace to obtain their self-propelled pallet jack, and also travel to the dock to obtain pallets and batteries for their audio headsets before being permitted to clock in to attend the pre-shift meeting.

    b. Upon arrival, Plaintiffs and similarly situated employees, would walk to the employee locker rooms to obtain their gloves and audio headset unit. They were not permitted to take their audio headset units from the workplace and therefore it was necessary for them to go to their locker to obtain the equipment necessary for them to perform their job duties.

    c. Plaintiffs and similarly situated employees were also required to walk toward the back of the workplace to obtain their self-propelled, electronic pallet jack used in the performance of their daily work.

    d. Upon selection of their pallet jacks, Plaintiffs and similarly situated employees would confirm that the pallet jack was in good working order for the day by

2

completing a pre-equipment checklist. For example, on occasions, an electronic pallet jack's battery may not have been charged prior to the shift, in which case, Plaintiffs, or other similar employees, would need to travel to the "Control Center" located near the dock to inform a technician that there was a problem with the pallet jack. The employer would reassign the employee a different pallet jack and the employee would then return to the area where the pallet jacks are stored to obtain the newly assigned equipment. In the event of such a problem, this would result in a 3-5 minute delay and because Plaintiffs and similarly situated employees could not know whether or not they would have to go through this process before arriving at the back of the workplace where the pallet jacks were stored, Plaintiffs and similarly situated employees were required to plan for such delays, by arriving early, to ensure that they were not considered late for their shift.

e. Once the Plaintiffs and similarly situated employees had a fully-charged electronic pallet jack, they would then travel to the dock area to obtain their three pallets, as well as batteries for their audio headsets, that they used throughout their shift.

f. Upon obtaining the pallets and headset batteries, Plaintiffs and similarly situated employees would have to go back to the front of the workplace, with their equipment, to clock in and attend a pre-shift meeting that was conducted prior to the start of their shift.

g. Plaintiffs estimate that they, and similarly situated employees, regularly spent at least ten to fifteen minutes prior to each shift performing these integral and indispensable pre-shift activities prior to arriving at the pre-shift meeting just prior to their shift. On occasion, where Plaintiffs and/or similarly situated

3

employees needed an equipment reassignment, the amount of pre-shift and uncompensated work could amount to approximately twenty minutes or more. As a result, Plaintiffs and similarly situated employees were required to arrive approximately fifteen to twenty minutes early for their shift to ensure that they could complete the uncompensated pre-shift activities.

4. Defendant instructed Plaintiffs and similarly situated employees that they were not permitted to clock in prior to performing the steps highlighted above.

5. Defendant's systematic violations of federal and state wage laws were willful.

6. Plaintiffs, on behalf of themselves individually and all others similarly situated, bring this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, to recover unpaid minimum and overtime wages owed to Plaintiffs and all other similarly situated workers employed by Defendant; and (b) a Rule 23 class action under Kansas state law, including the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 *et seq.*, breach of contract, and unjust enrichment.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction under 28 U.S.C. § 1311 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions.

8. The United States District Court for the District of Kansas has personal jurisdiction because Defendant is located and conducts business within this District.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Defendant has offices, conducts business, and can be found in the District of Kansas and the causes of action set forth herein have arisen and occurred in part in the District of Kansas. Venue is also proper under 29 U.S.C. § 1132(e)(2) because Defendant has substantial business contacts within the District of Kansas.

10. Kansas law authorizes court actions by private parties to recover damages for violation of the KWPA. Jurisdiction over the state law claims of Plaintiffs and all others similarly situated is based on 28 U.S.C. § 1367 and K.S.A. § 44-324, in that such state law claims are so related to the FLSA claims that they form part of the same case or controversy.

11. At all relevant times, Defendant has been an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

12. At all relevant times, Plaintiffs have been employed "employee[s,]" including each of the putative representative action plaintiffs.

13. At all relevant times, Plaintiffs and other putative plaintiffs were engaged in commerce and/or worked for Defendant, which is an "enterprise" engaged in commerce as defined by the FLSA.

14. At all times relevant herein, Defendant has had gross annual operating revenues in excess of $500,000.00 (Five Hundred Thousand Dollars).

**PARTIES**

15. Plaintiff Flerlage is a resident of the State of Kansas. From February 6, 2006 until July 5, 2018, Plaintiff Flerlage was employed by Defendant US Foods as an Order Selector at Defendant's workplace located at 4725 NW U.S. Highway 24, Topeka, KS 66618. Plaintiff Flerlage's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is contemporaneously filed hereto as Exhibit A.

16. Plaintiff Murray is a resident of the State of Kansas. From approximately May of 2015 until approximately November of 2017, Plaintiff Murray was employed by Defendant US Foods as an Order Selector at Defendant's workplace located at 4725 NW U.S. Highway 24, Topeka, KS 66618. Plaintiff Murray's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is contemporaneously filed hereto as Exhibit B.

17. Defendant US Foods, Inc. is a corporation organized under the laws of the State of

Delaware, with its principal place of business located at 9399 West Higgins Road, Suite 500, Rosemont, Illinois 60018. Defendant US Foods, Inc. owns and operates its Kansas Business location, in which Plaintiff and the putative class members were employed, at 4725 NW U.S. Highway 24, Topeka, KS 66618.

18. At all times relevant to this action, Defendant acted by and through its agents, servants, and employees, each of whom acted in the course and scope of their employment with and for Defendant.

## GENERAL ALLEGATIONS

19. Plaintiffs re-allege the allegations set forth above.

20. According to Defendant's Form 10-K, filed on February 27, 2018, US Foods is "among America's great food companies and one of only two foodservice distributors with a national footprint in the United States." U.S. Foods Form 10-K, p. 2 (available at http://d18rn0p25nwr6d.cloudfront.net/CIK-0001665918/6fbc7b79-2de4-43a1-b358-a1bde8ad905d.pdf). Defendant boasts of having "net sales of $24 billion in the fiscal year ended December 30, 2017" and that they are the "second largest foodservice distributor in the United States by annual sales, with a 2017 market share of approximately 8%." *Id.* US Foods supplies "approximately 250,000 customer locations nationwide" and "[a]s of December 30, 2017, [ ] had 25,355 employees, of which 25,053 were full-time employees."

21. Plaintiffs, and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendant at their Kansas property located at 4725 NW U.S. Highway 24, Topeka, KS 66618.

22. Plaintiffs, and all similarly situated employees entered into employment agreements with Defendant that provided that Plaintiffs would be paid at specified rates for all hours worked, pursuant to state/federal law.

6

**Unlawful Unpaid Compensable Time**

23. Plaintiffs re-allege the allegations set forth above.

24. Defendant requires its employees, such as Plaintiffs and the putative class members, to collect and prepare all equipment before they are permitted to clock in and begin receiving compensation.

25. The collection and preparation of equipment by Plaintiffs and the putative class members is an integral and indispensable part of Plaintiffs' and the putative class members' principal job duties.

26. As Order Selectors, or others with similar job titles, duties, and compensation structures, Plaintiffs and the putative class members are required to select various products, place products on pallets, and prepare products for delivery. Such job duties require the equipment described above and herein.

27. Pursuant to Defendant's policies, Plaintiffs, and all similarly situated employees are required to begin performing integral and indispensable pre-shift activities without compensation.

28. Pursuant to Defendant's policies, Plaintiffs, and all similarly situated employees, are subject to discipline if they clock in prior to performing these integral and indispensable pre-shift activities described herein.

29. As a result of Defendant's policies, Plaintiffs, and all similarly situated employees are not compensated at the legal and appropriate rates set forth pursuant to state/federal law and/or their employment agreements.

30. Defendant's failure to pay this unpaid time has resulted in Plaintiffs, and all similarly situated employees being regularly denied proper compensation under the FLSA, and/or the KWPA.

31. Plaintiffs, and all similarly situated employees, in conformance with Defendant's clock-in and clock-out policies and disciplinary policies, regularly commenced work fifteen to thirty minutes before the start of their scheduled shifts.

32. For example, during the workweek of Saturday, June 16, 2018 to Friday, June 22, 2018 (Defendant's workweek runs from Saturday to Friday), Plaintiff Flerlage worked five (5) shifts. Plaintiff Flerlage estimates that she spent approximately 12-13 minutes each of these shifts performing the uncompensated pre-shift activities described above in Paragraph 3. As a result, she worked approximately 1.042 hours that were uncompensated, all of which were overtime hours. Therefore, Plaintiff Flerlage should have been paid an overtime rate of $32.25 ($21.50*1.5) for these hours and was not paid approximately $33.59 during this workweek in violation of the FLSA, KWPA, and her employment agreement with Defendant.

33. For example, during the workweek of Saturday, October 14, 2017 to Friday, October 20, 2017 (Defendant's workweek runs from Saturday to Friday), Plaintiff Murray worked five (5) shifts. Plaintiff Murray estimates that he spent approximately 15 minutes each of these shifts performing the uncompensated pre-shift activities described above in Paragraph 3. As a result, he worked approximately 1.25 hours that were uncompensated, all of which were overtime hours. Therefore, Plaintiff Murray should have been paid an overtime rate of $31.50 ($21.00*1.5) for these hours and was not paid approximately $39.38 during this workweek in violation of the FLSA, KWPA, and his employment agreement with Defendant.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

34. Plaintiffs re-allege the allegations set forth above.

35. Plaintiffs bring Count I, the FLSA claim arising out of Defendant's unlawful time clock policies, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective:

    a. <u>FLSA Unpaid Overtime Collective</u>: All persons currently and formerly employed by Defendant as Order Selectors who worked at any time during the last three (3) years at Defendant's business location in Topeka, Kansas.

36. Plaintiffs' FLSA claim (Count I) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

37. Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Defendant's above-described FLSA violations. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendant's records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

38. Plaintiffs bring Count II, the KWPA claim arising out of Defendant's unlawful time-clock policies, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

    a. <u>KWPA Off-The-Clock Class</u>: All persons currently and formerly employed by Defendant as Order Selectors who worked at any time during the last five (5) years at Defendant's business location in Topeka, Kansas.

39. Plaintiffs bring Count III, the unjust enrichment/quantum meruit claim, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

    a. <u>Unjust Enrichment / Quantum Meruit Class</u>: All persons currently and formerly employed by Defendant as Order Selectors who worked at any time during the last five (5) years at Defendant's business location in Topeka, Kansas.

40. Plaintiffs bring Count IV, the breach of contract claim, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

    a. <u>Breach of Contract Class</u>: All persons currently and formerly employed by Defendant as Order Selectors who worked at any time during the last five (5) years at Defendant's business location in Topeka, Kansas.

41. Plaintiffs' KWPA claim (Count II), unjust enrichment/quantum meruit claim (Count III), and breach of contract claims (Count IV) described in detail below, satisfy the numerosity,

commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

42. These classes each potentially number in the hundreds of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

43. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

    a. Whether Defendant violated the law when it failed to pay Plaintiffs and class members for all hours worked;

    b. Whether Defendant's policy of refusing to compensate Order Selectors, and other similarly situated employees, for the pre-shift activities described herein cause Defendant to violate state/federal law and/or its agreements with its employees because such pre-shift activities are compensable pursuant to the state/federal law;

    c. Whether Defendant failed to pay Plaintiffs and class members all compensation due and owing in violation of the FLSA, KWPA, and/or the employment agreements between Defendant and its employees;

    d. Whether Defendant was unjustly enriched by virtue of its policies and practices with respect to Plaintiffs' and class members' pay;

    e. Whether Defendant willfully violated state and federal wage and hour laws; and

    f. Whether Defendant maintained a lawful timekeeping system.

44. The questions set forth above predominate over any questions affecting only

individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

45. Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful practices as the Plaintiffs.

46. A class action is the superior method for the fair and efficient adjudication to Plaintiffs' claims. Defendant has acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

47. Plaintiffs are adequate representatives because they are members of the respective classes they seek to represent, and their interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

48. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## **ALLEGATIONS APPLICABLE TO THE FLSA CLAIM (COUNT I)**

49. At all times material herein, Plaintiffs and all others similarly situated have been entitled

to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

50. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

51. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

52. During all relevant times to this action, Defendant was the "employer" of Plaintiffs and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

53. During all times relevant to this action, Plaintiffs and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

54. Plaintiffs, and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, these Plaintiffs and all similarly situated employees must be paid all wages in accordance with 29 U.S.C. §§ 206-207.

55. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

56. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) apply to Plaintiffs, or other similarly situated employees.

57. Plaintiffs and all similarly situated employees are victims of uniform and timeclock policies. Based on information and belief, Defendant applies this same unlawful compensation policy to all similarly situated employees working at Defendant's business location in Topeka, Kansas.

58. At all times relevant herein, Plaintiffs and similarly situated employees, were not

compensated for performing compensable pre-shift work activities that are integral and indispensable to the performance of their principal job activities and primary job duties.

59. Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

60. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA and, as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

61. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiffs and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid straight time wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO THE KWPA CLAIM
## (COUNT II)

62. At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 *et seq.*

63. The KWPA prohibits an employer from withholding, deducting, and/or diverting any portion of an employee's earned waged, subject to limited exceptions not applicable herein. *See* K.S.A.

§ 44-319(a)-(e).

64. During all times relevant to this action, Defendant was an "employer" of Plaintiffs and the class members within the meaning of the KWPA. K.S.A. § 44-313(a).

65. During all times relevant to this action, Plaintiffs and the class members were Defendant's "employees" within the meaning of the KWPA. K.S.A. § 44-313(b).

66. Plaintiffs and the class members are entitled to be compensated for all hours worked pursuant to state, federal, and/or the employment agreements between themselves and Defendant.

67. At all times relevant herein, Plaintiffs and similarly situated employees, were not compensated for performing compensable pre-shift work activities that are integral and indispensable to the performance of their principal job activities and primary job duties.

68. Pursuant to the KWPA, such employees are also entitled to be paid all wages due and, if Defendant's conduct is found to be willful, the Defendant would be liable for a penalty of up to 100% of the unpaid wages. K.S.A. § 44-315(b).

69. Plaintiffs and the class members are victims of uniform and employer-created timeclock policies. Based on information and belief, Defendant is applying the same unlawful timeclock policies to Plaintiffs and the class members throughout its business location in Topeka, Kansas.

70. Plaintiffs and the Class are entitled to all damages, penalties, fees, and costs, as provided by the KWPA, within five (5) years preceding the filing of this Complaint, plus periods of equitable tolling.

71. Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

## COUNT I - FLSA (Unpaid Overtime & Minimum Wages)

72. Plaintiffs re-allege the allegations set forth above.

73. Defendant violated the FLSA by failing to pay Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

74. Specifically, as discussed above, Defendant utilized an unlawful timeclock policy that required Order Selectors to regularly perform compensable activities that are integral and indispensable to the performance of their principal job duties without compensation and therefore Defendant violated the FLSA.

75. Defendant's practice was to unlawfully and willfully fail to properly pay its Order Selectors for all hours worked.

**WHEREFORE**, on Count I of this Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendant and pray this Court:

    a. Issue notice to all similarly situated employees of Defendant informing them of their right to file consents to join the FLSA portion of this action;

    b. Award Plaintiffs Flerlage and Murray, and all similarly situated employees, damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

    c. Award Plaintiffs Flerlage and Murray, and all similarly situated employees, liquidated damages under 29 U.S.C. § 216(b);

    d. Award Plaintiffs Flerlage and Murray, and all similarly situated employees, pre-judgment and post-judgment interest as provided by law;

    e. Award Plaintiffs Flerlage and Murray, and all similarly situated employees, attorneys' fees and costs under 29 U.S.C. § 216(b); and

    f. Award Plaintiffs Flerlage and Murray, and all similarly situated employees, such

other relief as the Court deems fair and equitable.

## COUNT II – KWPA (Unpaid Wages)

76. Plaintiffs re-allege the allegations as set forth above.

77. Defendant violated the KWPA by failing to pay Plaintiffs, and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

78. Specifically, as discussed above, Defendant utilize an unlawful timeclock policy that required Order Selectors, and other similarly situated employees, to regularly perform compensable activities that are integral and indispensable to the performance of their principal job duties without compensation and therefore Defendant violated the state/federal law.

79. Defendant's practice was to unlawfully and willfully fail to properly pay its Order Selectors, and other similarly situated employees, for all hours worked.

**WHEREFORE**, on Count II of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

   a. Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

   b. Award Plaintiffs Flerlage and Murray and the Class damages for unpaid minimum wages and unpaid overtime wages under the KWPA;

   c. Award Plaintiffs Flerlage and Murray and the Class liquidated damages under KWPA;

   d. Award Plaintiffs Flerlage and Murray and the Class pre-judgment and post-judgment interest as provided by law;

   e. Award Plaintiffs Flerlage and Murray and the Class attorneys' fees and costs as allowed by law; and

f. Award Plaintiffs Flerlage and Murray and the Class such other relief as the Court deems fair and equitable.

### COUNT III - Unjust Enrichment / Quantum Meruit

80. Plaintiffs re-allege the allegations set forth above.

81. Defendant benefited from the unpaid work performed by Plaintiffs and the Class prior to the start of their shifts.

82. Defendant is aware or should have been aware that it was receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

83. Defendant's acceptance and retention of the benefit of Plaintiffs' and the Class's unpaid labor was inequitable and resulted in Defendant being unjustly enriched.

**WHEREFORE**, on Count III of this Complaint, Plaintiffs and the Class demand judgment against Defendant and pray this Court:

a. Certify the state law claim set forth in Count XI above as a class action pursuant to Fed. R. Civ. P. 23;

b. Order Defendant to disgorge the value of their ill-gained benefits to Plaintiffs and the Class;

c. Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law; and

d. Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

### COUNT IV – Breach of Contract

84. Plaintiffs re-allege the allegations set forth above.

85. Defendant entered into employment agreements with Plaintiffs and all similarly

situated employees through which they agreed that they would be paid an agreed-upon hourly rate for every hour worked during their employment pursuant to state/federal law.

86. Defendant breached this contract by failing to pay Plaintiffs and all others similarly situated their agreed-upon hourly rate for every compensable hour worked during their employment.

87. Because of Defendant's breach, Plaintiffs and all others similarly situated have been damaged.

WHEREFORE, on Count IV of this Complaint, Plaintiffs and the Class demand judgment against Defendant and pray this Court:

    a. Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

    b. Order Defendant to pay Plaintiffs and the Class for the improperly withheld wages in violation of their contract;

    c. Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law; and

    d. Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury of all issues so triable.

Dated: November 15, 2018

Respectfully submitted,

OSMAN & SMAY LLP

By: /s/ Matthew E. Osman
Matthew E. Osman, MO Bar #60137
/s/ Kathryn S. Rickley
Kathryn S. Rickley, MO Bar #59435
8500 W. 110th Street, Suite 330
Overland Park, Kansas 66210
Telephone: (913) 667-9243
Facsimile: (866) 470-9243
mosman@workerwagerights.com
krickley@workerwagerights.com

**ATTORNEYS FOR PLAINTIFFS**