## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **MARGARET FLERLAGE &**<br>**MARKUS MURRAY,**<br>**individually, and on behalf of all others**<br>**similarly situated,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**US FOODS, INC.,**<br><br>                    **Defendant.** | **Case No. 18-2614-DDC-TJJ** |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on class representatives Margaret Flerlage and

Markus Murray's Unopposed Motion for Preliminary Settlement Approval (Doc. 54).

Plaintiff's motion asks the court for (1) conditional certification of settlement class,[1] (2)

preliminary approval of a proposed settlement, (3) approval of the form and manner of notice,

and (4) a schedule and hearing date for final settlement approval.  Doc. 55 at 3.  For the

following reasons, the court grants plaintiffs' request to certify a settlement class and for

preliminary approval under Rule 23 for their KWPA claims.  Also, the court grants plaintiffs'

request to certify a collective action under the FLSA but denies plaintiffs' request for preliminary

approval of their FLSA settlement.  Plaintiffs also ask the court to approve the form and manner

of the notice to class members and set a schedule governing notice and hearing date for final

settlement approval.  The court grants each of those requests.  The court explains why, below.

---

[1]        Plaintiffs seek conditional certification of a collective action under the Fair Labor Standards Act
("FLSA") and conditional certification of a class action under Federal Rule of Civil Procedure 23 for their
Kansas Wage Payment Act ("KWPA") claims.

## I.      Background

On January 22, 2019, plaintiffs Margaret Flerlage and Markus Murray filed, collectively and as a class action, claims against defendant US Foods, Inc. for FLSA and KWPA violations. Doc. 14.  The claims arise from allegations that defendant failed to pay plaintiffs, and others similarly situated, for hours and overtime as required by state and federal law.  Plaintiffs allege defendant required them to work without compensation before they "clocked in" every morning. On February 6, 2019, defendant filed an Answer denying all liability.  Doc. 18.  The parties then served initial disclosures, interrogatories, requests for production, and they conducted depositions.  On August 29, 2019, the parties participated in a mediation.  The result of which is the Settlement Agreement, that the parties now ask the court to approve preliminarily.

On February 7, 2020, plaintiffs filed an unopposed Motion for Preliminary Settlement Approval (Doc. 54) and a memorandum in support of that motion (Doc. 55).  Their motion asks the court to enter an Order approving the Joint Stipulation of Class Action and FLSA Settlement. More specifically, plaintiffs request that the court enter an order that:

1.  certifies the proposed Settlement Class for settlement purposes only,

2.  grants preliminary approval of the proposed settlement,

3.  directs notice to be disseminated to Settlement Class Members in the form and manner proposed by the parties, and

4.  sets a schedule and hearing for final approval of the Settlement and related deadlines.

Doc. 55 at 3.  The court addresses each of these requests, below.

The parties' proposed Settlement Class includes "all persons who are or were previously employed by Defendant as Order Selectors who worked at any time at Defendant's business location in Topeka, Kansas[,] from November 15, 2015 until September 30, 2019."  Doc. 55-1 at

4, 6 (Settlement Agreement ¶¶ 19, 33).  As discussed, plaintiffs ask the court to enter an order

that certifies the proposed settlement class for settlement purposes only.  Plaintiffs request that

the court conditionally certify the Rule 23 Class for the KWPA state law claims and

conditionally certify the collective class for the FLSA claims.  In Part II, below, the court

addresses class certification and preliminary approval under the Rule 23 requirements.  In Part

III, below, the court addresses plaintiffs' FLSA collective action claims.

## II.     KWPA claims (Rule 23)

The court beings its analysis with Rule 23 certification. Then it turns to Rule 23

settlement approval.  Next it addresses notice, then finally the settlement schedule.

### A.   Rule 23 Certification

#### 1.   Legal Standard

"Class action settlements are premised upon the validity of the underlying class

certification."  *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004).  Class

certification is appropriate if the district court finds, after conducting a "rigorous analysis," that

the proposed class satisfies the requirements of Fed. R. Civ. P. 23.  *Wal-Mart Stores, Inc. v.

Dukes*, 564 U.S. 338, 351 (2011) (citation and internal quotation marks omitted).  "Confronted

with a request for settlement-only class certification, a district court need not inquire whether the

case, if tried, would present intractable management problems, for the proposal is that there be

no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citing Fed. R. Civ. P.

23(b)(3)(D)).  "But other specifications of the Rule—those designed to protect absentees by

blocking unwarranted or overbroad class definitions—demand undiluted, even heightened,

attention in the settlement context."  *Id.*

The elements of class certification are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation, plus one of the requirements of Rule 23(b)(1) through (3).  Fed. R. Civ. P. 23.  Plaintiffs seek certification under Rule 23(b)(3).  Rule 23(b)(3) requires plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 2.  Analysis

The parties assert that all of the Rule 23 class action certification requirements are satisfied here.  The court addresses each of the Rule 23 requirements, below.

### a.  Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable."  Numerosity "requires examination of the specific facts of each case and imposes no absolute limitations."  *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 667 (D. Kan. 2013).  A plaintiff seeking class certification "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."  *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014).

Here, plaintiffs allege the numerosity element is met because the preliminary estimate of the class size is 341 persons and that number is enough to make joinder impracticable.  Doc. 55 at 9.  "[N]umerosity does not require plaintiffs to establish the precise number of class members, only that the class is sufficiently numerous."  *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 608 (D. Kan. 2014).  In *Nieberding*, this court found that plaintiffs had satisfied the numerosity requirement, when the parties stipulated 233 persons belonged to the class.  *Id.*  For the same reasons, plaintiffs in this case satisfy the numerosity requirement.

### b.  Commonality

Rule 23(a)(2) requires plaintiffs to show "questions of law or fact common to the class." Commonality requires plaintiffs "to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (citation and internal quotation marks omitted).  In other words, the "claims must depend upon a common contention" that is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*  (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 NYU L. REV. 97, 132 (2009)).

Plaintiffs allege questions of law or fact common to the class exist.  Plaintiffs assert that defendant did not compensate them for time worked before they could clock in, and the evidence reflecting these allegations permeate the class.  Doc 55 at 9–10.  And, plaintiffs bring all claims under the same state and federal laws. *Id.* at 10.  Here, the alleged non-payment is a common issue for all members of the putative class.  Plaintiffs' ability to prove a violation of law occurred is common to all putative class members' claims; a common answer that will drive the litigation's outcome.  Therefore, plaintiffs satisfy the commonality requirement.

### c.  Typicality

Rule 23(a)(3) requires the claims of plaintiffs to be typical of the class they seek to represent.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010).  The test of typicality is whether "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Id.* at 1199.  Plaintiffs

allege that representative plaintiffs Margaret Flerlage and Markus Murray's claims typify the claims of the other class members because they arise from the same alleged course of conduct by defendant and rest on the same legal theory—violation of the KWPA.  Doc. 55 at 10.  Here, plaintiffs' legal and remedial theories are identical to those of the putative class, so plaintiffs satisfy the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires named plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class."  Determining adequacy of representation turns on two questions:  (1) "whether the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. at 671.  "Minor conflicts among class members do not defeat certification; to defeat class certification, a conflict must be 'fundamental' and go to specific issues in controversy."  *Id.* (quoting *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (further citations omitted)).  "A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members."  *Id.*

Here, plaintiffs assert that this adequacy of representation test is met because the lead plaintiffs are members of the class and sustained the same alleged injuries as class members, and the lead plaintiffs and their counsel have the same interests and objectives as class members.  Doc. 55 at 10.  Because there is no showing of any conflict or other evidence that would make named plaintiffs and counsel inadequate, the court finds that this factor is satisfied.

### e.   Rule 23(b)(3) Requirement

In addition to the requirements under Rule 23(a), a plaintiff must affirmatively demonstrate that the class satisfies the requirements for one of the types of class actions listed in Rule 23(b).  Here, plaintiffs seek class certification under Rule 23(b)(3).  To certify a class under Rule 23(b)(3), plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Factors pertinent to this finding include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

 These factors weigh in favor of certification.  Plaintiffs contend that the common questions of fact and law, described in the paragraph above discussing Rule 23(a)(2)'s commonality requirement, predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Doc. 55 at 11.  Class members have little interest in individually controlling the prosecution of separate actions because the amount at stake for each individual class member is small relative to the cost of maintaining a separate action.  The parties have not suggested any similar litigation and the court is unaware of any.  Finally, the class encompasses only people who worked in Kansas, and therefore, Kansas is an appropriate forum for the class.

For these reasons, the court finds that plaintiffs have satisfied the requirements for certification of a Rule 23(b)(3) class action.  As a result, the court grants the plaintiffs' motion for class certification for the settlement purposes for the KWPA claim.

### B.  Rule 23 Preliminary Settlement Approval

Plaintiffs request that the court enter an order granting preliminary approval of the proposed settlement.  The court finds that the proposed settlement is "fair, reasonable, and adequate" under Rule 23 for the reasons explained below.  Fed. R. Civ. P. 23(e)(2).

### 1.  Overview of the Proposed Settlement

The Settlement Agreement requires defendant to pay the mediator's fees and a Gross Settlement Amount ("GSA") of $210,000.  Doc. 55-1 at 4 (Settlement Agreement ¶ 20).  The GSA will pay all claims by class members (the Net Settlement Amount), any fees and costs awarded to the plaintiffs' counsel, and any incentive award to the representative plaintiffs.  *Id.*

The Net Settlement Amount consists of the GSA less (1) plaintiffs' attorneys' fees, (2) expenses incurred in the action, claims administration costs, penalties and interest, and (3) plaintiffs' representative service award.  Doc. 55-1 at 4 (Settlement Agreement ¶ 22).

The Settlement Agreement limits plaintiffs' counsel to no more than $17,500 in costs and $125,000 in attorneys' fees.  Doc. 55-1 at 11 (Settlement Agreement ¶ 48).  Plaintiffs' counsel requests a service award for class representatives, Ms. Flerlage and Mr. Murray, of $3,500 each.  Doc. 55 at 7.  Assuming the court grants final approval of the settlement as currently proposed, the Net Settlement Amount will consist of about $60,500 to divide among class members who file claims.

The amount each class and collective member will receive will be based on the weeks they worked from November 15, 2015 to September 30, 2019.  Doc. 55-1 at 16 (Settlement

Agreement ¶ 55.a.).  The amount received for each work week will equal the Net Settlement

Amount divided by total number of workweeks of the class.  *Id*.  Each class and collective

member will receive an estimated $4.51 per week worked during the Class Period.  Doc. 55 at 7.

So, for example, if one worker worked every week for the Class Period, six weeks shy of four

years, he would receive an estimated $911.02 total settlement payment.  If all 341 workers

worked for the entire period, each worker would receive just $177.42.

### 2.  Legal Standard

Under Rule 23(e), parties may settle the claims of a certified class action only with court

approval.  The court may approve a settlement only upon finding that it is "fair, reasonable, and

adequate."  Fed. R. Civ. P. 23(e)(2).  The Tenth Circuit has specified four factors that a district

court must consider when assessing whether a proposed settlement is "fair, reasonable, and

adequate":

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The settlement approval process typically occurs in two phases.  First, the court considers

whether preliminary approval of the settlement is appropriate.  William B. Rubenstein, *Newberg*

*on Class Actions* § 13:10 (5th ed. 2020); *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV,

2012 WL 6085135, at *4 (D. Kan. Dec. 6, 2012).  "If the Court grants preliminary approval, it

directs notice to class members and sets a hearing at which it will make a final determination on

the fairness of the class settlement." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also Newberg on Class Actions* § 13:10 ("[T]he court's primary objective [at the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."). Second, "taking account of all of the information learned during [the preliminary approval] process, the court decides whether to give 'final approval' to the settlement." *Newberg on Class Actions* § 13:10.

Because preliminary approval is just the first step of the approval process, courts apply a "less stringent" standard than that at final approval. *Freebird*, 2012 WL 6085135, at *5. "[D]istrict courts have developed a jurisprudence whereby they undertake some review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste of time." *Newberg on Class Actions* § 13:10. "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." *Id.* (internal citation omitted). "While the Court will consider [the Tenth Circuit's] factors in depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 502–03.

### 3. Analysis

After analyzing the Tenth Circuit's factors under the relaxed standard that is appropriate at the preliminary approval stage, the court finds that all four factors favor approval of the settlement proposed here. *See Rutter & Wilbanks Corp.*, 314 F.3d at 1188 (noting the four factors to consider when evaluating a class action settlement).

*First*, the court concludes that the parties fairly and honestly negotiated the settlement. The parties arrived at the settlement after mediating the case with mediator Michelle Minor. When the mediation occurred, the parties already had litigated the dispute for nearly 10 months and had exchanged initial disclosures and requests for production and had taken depositions. Thus, when negotiating the settlement, both parties knew the strengths and weaknesses of their cases and could weigh the benefits of settling. And, engaging a mediator at least suggests fair and honest negotiations, so this factor favors preliminary approval.

*Second*, the court finds that serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt. Plaintiffs' counsel alleges that both parties have gained comprehensive knowledge of each party's case after thorough investigation of the facts and law, and they were able to make an informed assessment based on their knowledge of the case. Basically, the agreed-upon settlement manifests serious questions of law and fact and doubt about the ultimate outcome if this case proceeded to trial. This factor favors preliminary approval.

*Third*, the court finds that the value of an immediate recovery outweighs the potential for future relief after protracted and expensive litigation. Considering about two thirds of the settlement, as it stands, is going to plaintiffs' counsel, and class members are likely to recover about $4.51 per week worked, it is evident that the cost of litigation greatly outweighs any potential relief that plaintiffs could gain from further pursuing this lawsuit.

*Fourth*, the parties assert the Settlement Agreement is fair and reasonable. The parties, all of whom are represented by experienced and motivated counsel, have agreed to a settlement they evaluate as fair and reasonable. The agreement of the parties, and the notice plan to give

potential class members an opportunity to object to the settlement terms suggests the agreement is a fair and reasonable one.

For these reasons the court finds that all four of the Tenth Circuit's factors favor preliminary approval.  Therefore, the court grants preliminary approval of the proposed Settlement Agreement for the purposes of the KWPA claims under Rule 23.

### C.       Notice

#### 1.  Legal Standard

Having approved the Settlement Agreement preliminarily, the court next considers the content, form, and manner of notice that the parties propose to have the Claim Administrator send to class members.  When the court certifies a class action under Fed. R. Civ. P. 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language,"

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Also, as part of Rule 23's settlement approval process, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal..." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e), however, imposes a less stringent notice standard than Rule 23(c)(2)(B). Rule 23(c)(2)(B) requires the court to direct to class members "the best notice that is practicable under the circumstances." Such notice is essential "to ensure that class members who desire to pursue their own claims individually have the opportunity to exercise their right to opt out of the class." *Gottlieb v. Wiles*, 11 F.3d 1004, 1012 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). By contrast, Rule 23(e) merely requires "notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1).

"In addition to the requirements of Rule 23, the [C]onstitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement." *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005) (citing U.S. Const. amend. V) (further citations omitted). "For due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id*. at 944 (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Id*. (citations omitted).

Here the class members have not yet received any notice of this class action or the proposed settlement. Thus, the court must direct that they receive "the best notice that is

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The "best notice practicable" does not necessarily mean actual notice—*e.g.*, mailed notice to each class member.  *DeJulius*, 429 F.3d at 944.  Instead, notice by publication can satisfy Rule 23 and due process when the parties do not know the identity of the class members.  *Id*. (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 320 (1950)).  However, "[i]ndividual notice to identifiable class members is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'"  *Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

### 2.   Proposed Notice

Under the Settlement Agreement, the Settlement Administrator will send notice to all of the class members via regular First-Class U.S. Mail.[2]  Doc. 55-1 at 12 (Settlement Agreement ¶ 50.c.).  This mailed notice will inform the recipient about the lawsuit, that the class member is a part of the class, and the estimated individual settlement share.  Doc. 55-1 at 11–12 (Settlement Agreement ¶ 50.a.).  Also, it explains that the recipient will be bound by the judgment if he or she does nothing and provides instructions how to "opt-out."  Doc. 55-1 at 13 (Settlement Agreement ¶ 51).  The proposed notice will direct class members to the PACER, "Public Access to Court Electronic Records," website with the case number and provide contact information for plaintiffs' counsel to answer any questions.  Doc. 55-2 at 5 (Proposed Notice of Class and Collective Action Settlement).

---

[2]      Defendant has agreed to provide the class list to the Settlement Administrator.  Doc. 55-1 at 12 (Settlement Agreement ¶ 50.b.).

Plaintiffs propose that the court grant class members 60 days from the Settlement Administrator's initial mailing of notices of settlement by the Settlement Administrator to opt-out or object to the settlement.  Doc. 55-1 at 6 (Settlement Agreement ¶ 32).  If individual notice does not reach a class member and no forwarding address is provided, the Settlement Agreement provides that the Settlement Administrator will use skip-tracing to determine a correct address.  Doc. 55-1 at 12 (Settlement Agreement ¶ 50.d.).

### 3.  Analysis

The court must approve the content, form, and manner of notice proposed by the parties.  The mailed notice provides class members with the information that Fed. R. Civ. P. 23(c)(2)(B) requires.  Individual mailed notice, when combined with contact information for plaintiffs' counsel, affords the "best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Because all class members were employees of defendant, defendant can provide names, addresses, and social security numbers of the class members to the Settlement Administrator.  This information makes the task of providing individual mailed notice easily achievable.  The court also concludes that 60 days is sufficient for class members to review the settlement information, weigh their options, and select a course of action.  *See DeJulius*, 429 F.3d at 945–47 (affirming notice program granting majority of class members less than 32 days to respond to proposed class settlement); *Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 WL 4523806, at *5 (D. Kan. July 27, 2015) (approving schedule giving class members 28 days to opt-out or object to class action settlement).  The court thus approves the proposed notice—with one exception.

The court observes that the proposed notice refers to the amounts of the service fee awards and attorneys' fee award that plaintiffs seek in their motion.  Doc. 55-2 at 2.  As

discussed below, the court finds these awards are not fair and reasonable, and thus the court refuses to approve the parties' FLSA settlement. The court thus directs the parties to revise this portion of the notice before issuing notice to class members. The notice should provide a revised proposed service fee award and attorneys' fee award and note that these amounts still are subject to the court's approval.

### D.     Settlement Schedule

Next, plaintiffs propose that the following schedule govern notice, the computation of claims, opt-outs, objections filed by class members, and the motion for final approval. Doc. 55 at 6–7. Finding the proposed schedule reasonable, the court approves and adopts the parts of the schedule leading to and concluding with filing a motion for final approval, as set out below.[3]

| Event | Deadline |
| --- | --- |
| Retention of Settlement Administrator | 7 Days After Preliminary Approval of Settlement |
| Defendant to provide Settlement Administrator with Confidential Class List and Work Weeks of Each Class Member | 20 Days After Preliminary Approval of Settlement |
| **Notice Deadline** – Settlement Administrator must send notice to class members. | 14 Days After Settlement Administrator Receives Class List |
| **Response Deadline** – Response Deadline for Class Members (opting out, disputing information, and objecting) | 60 Days After Notice of Settlement is Mailed |
| Motion for Final Approval | 30 Days after Response Deadline Expires |
| Settlement Approval Hearing | February 4, 2021 at 9AM |

### E.  Conclusion

For reasons explained above, the court grants class certification under Rule 23 and preliminary approval of the parties' settlement of the KWPA claims. The court directs the

---

[3]     The remainder of the plaintiffs' proposed schedule is subject to approval in the Order on final approval.

parties to send notice to settlement class members in the form and manner proposed by the parties (with one exception noted above) and adopts the parties' schedule for settlement and related deadlines.

### III. FLSA Claims

#### A. FLSA Collective Action Certification

##### 1. Legal Standard

Plaintiffs assert FLSA claims and seek to certify a collective action under 29 U.S.C. § 216(b).  "Section 216(b) of the FLSA provides for an opt-in class action on behalf of employees who are 'similarly situated' to the plaintiffs."  *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012).  The Tenth Circuit has approved a two-step approach to certification of a collective action.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

The first step requires a court to make an initial notice stage determination, applying a relatively lenient standard.  *Id.* at 1103.  The first stage of the two-stage approach requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (internal quotation marks and citation omitted).  This initial stage determination certifies the case as a collective action for purposes of sending the opt-in notice to potential class members.  *Id.*  The second stage occurs, if necessary, usually upon a party's motion, after discovery is complete.  *Id.* at 1102–03.  Then, the court determines whether the class should remain certified, or be decertified using a stricter standard.  *Id.*

### 2.  Analysis

Plaintiffs contend that "the class plainly meets the requirement of 29 U.S.C. § 216(b) because all members are 'similarly situated.'"  Doc. 55 at 15.  All members were Order selectors at defendant's Topeka location, could legally bring the same action (that they were required to work off the clock and thus undercompensated) against defendant, and, as far as plaintiffs' counsel knows, defendant has no unique defenses against any individual member.  Plaintiffs have asserted substantial allegations that the putative class members were victims of single policy of defendant.  Thus, the court finds it appropriate to certify a collective action for the purpose of sending the opt-in notice to potential class members.

### B.  FLSA Preliminary Approval

#### 1.  Legal Standard

When parties settle FLSA claims, they must present the settlement to the court to review and decide whether the settlement is fair and reasonable.  *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at \*3 (D. Kan. Aug. 18, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  "To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned."  *Id. (citing Lynn's Food Stores, Inc.*, 679 F.2d at 1354).  To approve an FLSA settlement, the court must decide whether: (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorneys' fees.  *Barbosa*, 2015 WL 4920292, at \*5 (citing *McCaffrey*, 2011 WL 32436, at \*2).

### 2.   Analysis

After reviewing plaintiffs' submissions, the court concludes that it cannot approve the parties' settlement of the FLSA collective action claims because the proposed attorneys' fees are not reasonable.  The court explains why below.

#### a.   Bona Fide Dispute

Before approving an FLSA settlement, the parties must submit sufficient information for the court to conclude that a bona fide dispute exists.  *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 32436, at *4 (D. Kan. Jan. 5, 2011) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).  To satisfy this obligation, the parties must provide the court with:  (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and, (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  *Id.*

Plaintiffs assert that a bona fide dispute exists because the parties genuinely disagree whether employees worked off the clock, unpaid overtime.  Plaintiffs assert defendant mandated they work off the clock for as much as 15 to 20 minutes before their scheduled shifts, thus violating the FLSA.  Defendant denies these allegations, asserting at least 14 affirmative defenses.  Therefore, the claims present a bona fide dispute whether defendant violated the FLSA, with the potential for either side to prevail if the case continued.

#### b.   Fair and Equitable

The court next considers whether the proposed settlement is a fair and equitable one.  "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the

employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-cv-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). To determine if the proposed settlement is fair and equitable, courts regularly examine the factors that apply to proposed class action settlements under Rule 23(e). *Barbosa v. Nat'l Beef Packing Co. LLC*, No. 12-2311-KHV, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014); *Tommey v. Computer Scis. Corp.*, No. 11-CV-02214-EFM, 2015 WL 1623025, at *2 (D. Kan. Apr. 13, 2015). As discussed in Part II.B. of this Order, the proposed settlement satisfies the factors of Rule 23(e).

Although these factors may demonstrate that a settlement agreement is fair and reasonable, they are not dispositive. *See McCaffrey*, 2011 WL 32436, at *5 (explaining that the Rule 23(e) factors "provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative"). Besides the four factors listed above, the court also must determine "that the proposed settlement is fair and equitable to all parties in light of the history and policy of the FLSA." *Gambrell v. Weber Carpet Inc.*, No. 10-2131-KHV, 2012 WL 5306273, at *5 (D. Kan. Oct. 29, 2012). The court examines several additional considerations to determine whether the Settlement Agreement is fair and equitable. They include notice of the proposed settlement, the settlement's confidentiality provisions, and the proposed service awards to the named plaintiffs.

The FLSA does not require a fairness hearing, but settlements of class actions under Fed. R. Civ. P. 23 do require such hearings. So, the court must hold a fairness hearing in this case. Additionally, as discussed in Part II.C. of this Order, plaintiffs' proposed notice is sufficient. The parties' proposed notice reasonably provides to the 341 class members notice of the settlement and opportunity to object. The proposed Settlement Agreement contains no

confidentiality agreements.  The court, thus, finds these provisions of the Settlement Agreement are fair and reasonable.

But, the court concludes that the proposed service awards don't satisfy this standard.  The court must examine any service award payments to determine whether they are fair and reasonable.  *See Tommey*, 2015 WL 1623025, at *2; *Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 1789100, at *7 (D. Kan. May 17, 2012).  Here, plaintiffs ask the court to approve service awards in the amount of $3,500 to both representative plaintiffs.  Doc. 55 at 18.

According to their own estimates, plaintiff Margaret Flerlage spent about 32 to 34 hours on the case, and plaintiff Markus Murray spent some 44 to 46 hours on the case.  Doc. 55 at 19. In addition, plaintiffs assert, they bear a "reputational risk" by attaching their name to litigation and the broad general release of claims, this risk, plaintiffs say, justifies service awards.  *Id*.  To support their argument that this service award is fair and reasonable, plaintiffs cite two cases where our court approved service awards of $5,000:  *Enegren v. KC Lodge Ventures, LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177, at *9 (D. Kan. Oct. 11, 2019); and *In re Sprint Corp. ERISA Litigation*, 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006).  But, both in *Enegren* and *Sprint Corp.*, plaintiffs asked the court to approve a service award of $15,000 for the representative plaintiffs, and in both cases, the court reduced the award to $5,000, finding that amount adequately compensated the representative plaintiffs for 131 hours and 80 hours of time, respectively.  *See Enegren*, 2019 WL 5102177, at *8–9; *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1271.  Contrary to plaintiffs' reliance on these precedents, both cases support reducing the service award here.

In *Enegren*, this court found a service award amounting to $114.50 per hour "out of line with awards in this district," even when the plaintiff had agreed to release all claims she could

assert against defendant and made a similar argument about reputational risk that plaintiffs assert here. *Enegren*, 2019 WL 5102177, at *8. "[O]ur court has found that $20 per hour is a reasonable incentive fee." *Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, No. 17-2095-DDC-JPO, 2019 WL 1002046, at *19 (D. Kan. Feb. 28, 2019). The proposed amount here rewards plaintiffs about $106 and $78 per hour respectively. This award also is a much greater amount than any class member could recover in the settlement. Given the court's $20 per hour standard, the proposed service award of $3,500 for Ms. Flerlage and Mr. Murray each is unreasonable. The court thus cannot approve the proposed service award here. If the parties want to reapply to the court for a service award, they must reduce the proposed service award to one that properly reflects the time the representative plaintiffs actually invested in this lawsuit. Otherwise, before it will approve the settlement, the court will reduce the service award to an amount it determines fair and equitable.

### c.   Reasonable Attorneys' Fees

The FLSA requires the parties to a settlement agreement to include an award of reasonable attorneys' fees and the costs of the action. 29 U.S.C. § 216(b); *see also McCaffrey*, 2011 WL 32436, at *2. Though the court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award nevertheless is mandatory. *Barbosa*, 2015 WL 4920292, at *4.

The parties' Settlement Agreement permits plaintiffs' counsel to seek an award of attorneys' fees in an amount not exceeding $125,000. Doc. 55-1 at 11 (Settlement Agreement ¶ 48). The Settlement Agreement provides that the attorneys' fee award will be paid out of the GSA. *Id.* With their motion, plaintiffs ask the court to award them $125,000 in attorneys' fees. Doc. 55 at 20. This requested amount is 59.5% of the total GSA. The parties' Settlement

Agreement also allows plaintiffs' attorneys to seek costs in an amount not exceeding $17,500. Doc. 55-1 at 11 (Settlement Agreement ¶ 48). This amount also is paid out of the GSA. *Id.* Plaintiffs' counsel seeks the full amount—explaining that the $17,500 costs award includes $2,500 for counsel's expenses and $15,000 for settlement administration costs. Doc. 55 at 7 n.7. Plaintiffs argue that because defendant has agreed not to oppose its requested fees and expenses, the request is, therefore, reasonable. Doc. 55 at 17. However, the parties have agreed to a common fund settlement, from which the fees are paid. So, defendant has little stake in the decision how much of the money goes to the plaintiffs' lawyers' fees and costs vis-à-vis to the Net Settlement Amount, or amount for class members who file claims.

The requested attorneys' fees represent nearly sixty percent of the common fund. A percentage fee from a common fund award "must be reasonable and . . . the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award." *Barbosa*, 2015 WL 4920292, at *7 (citing *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988)). To determine the fee award's reasonableness, "[t]he Tenth Circuit applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.* (first citing *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); and then citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)). This method calls for a court to calculate a lodestar amount, "which represents the number of hours reasonably expended multiplied by a reasonable hourly rate." *Solis*, 2014 WL 4357486, at *4 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citation omitted)); *see also Hobbs v. Tandem Envtl. Sols., Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012).

The hybrid approach also requires consideration of the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).  Those factors are:  (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Barbosa*, 2015 WL 4920292, at *8 (first citing *Rosenbaum*, 64 F.3d at 1445; and then citing *Johnson*, 488 F.2d at 717–19).  While several factors are neutral or favor approving the requested attorneys' fees, the court finds that the customary fee and awards in similar cases factors outweigh the other factors.  The court thus finds the requested attorneys' fees are not fair and reasonable for the following reasons.

**(1) Time and Labor Required**

Plaintiffs' counsel represents that they have spent about 608.97 hours working on this case and expect to spend about 30 more hours on it.  Doc. 55 at 22.  This results in a rate of $195.63 an hour.  Plaintiffs' counsel documents a lodestar of $237,065.  *Id.*  While the negative lodestar multiplier of .527 weighs in favor of reasonableness of the fee award, the percentage of nearly 60 percent of the GSA weighs against it.

**(2) Novelty and Difficulty of the Questions Presented in the Case & (3) Skill Requisite to Perform the Legal Service Properly**

Plaintiffs' counsel asserts that knowledge of FLSA and the state equivalent, KWPA, require an amount of skill and dedication not typical in the legal community.  Doc. 55 at 23.

Even if this assertion is accurate, the hourly rates above reflect the skill required to handle the questions this lawsuit presents.  Therefore, these factors are neutral in the analysis.

### (4) Preclusion of Other Employment

Plaintiffs' counsel asserts that this case consumed a large amount of time, naturally precluding their small law firm from capitalizing on other opportunities.  Doc. 55 at 23.  The time and effort spent likely demonstrates that the lawsuit precluded plaintiffs' counsel from working on other matters, and because they might not recover at all given the contingency agreement, this factor favors approving the fee award.

### (5) Customary Fee

Plaintiffs did not pay a retainer and agreed to a contingency award of the attorney's lodestar, which plaintiffs argue is reasonable considering the policy provisions of the FLSA. Doc. 55 at 23.  This court "typically [has] applied the percentage of the fund method when awarding fees in common fund, FLSA collective actions."  *Barbosa*, 2015 WL 4920292, at *11 (citing *Bruner v. Sprint/United Mgmt. Co., Nos. 07-2164-KHV, 08-2133-KHV, 08-2149-KHV,* 2009 WL 2058762, at *7 (D. Kan. July 14, 2009)).  "Fee awards in these cases have ranged from four percent to 58 percent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars."  *Id.*

The fee award requested here alone is 59.5% of the GSA, and the combined requested fee and cost award is about 65% of the GSA.  The percentage of the fund requested by counsel is just outside the top range of the customary percentage of the fund approved by this court. Therefore, this factor cuts against approving the fee award.

**(6) Whether the Fee is Fixed or Contingent**

While plaintiffs' counsel contends that the contingency fee is essential in enforcing the mandates of the FLSA, a contingency fee agreement is only one of many relevant factors, and it provides no conclusive evidence of a fee award's reasonableness. *Bruner*, 2009 WL 2058762, at *8. Therefore, this factor is neutral.

**(7) Time Limitations Imposed by the Client or Circumstances**

Plaintiffs' counsel provides no information about any time limitations involved here. Any time limitations imposed in this case are inherent in any engagement and not specific to an FLSA action like this one. Thus, this factor is neutral.

**(8) Amount Involved and Results Obtained**

Plaintiffs' counsel secured a favorable result. Each opt-in plaintiff will receive a monetary settlement from the common fund computed on a pro rata basis using an equitable formula based on the number of weeks worked by each opt-in plaintiff. Defendant continues to contest its liability, and so the ultimate outcome of this litigation (if it had not settled) remains in doubt. The settlement avoids the uncertainty and rigors of trial and produces a favorable result for the opt-in plaintiffs. This factor favors approval of the fee award.

**(9) Experience, Reputation, and Ability of the Attorneys**

Plaintiffs' counsel is experienced with FLSA cases. Plaintiffs' counsel asserts they have represented more than 2,700 employees in similar cases and recovered more than $15.4 million for their clients. Doc. 55 at 24. This factor favors approval of the fee award.

**(10) Undesirability of the Case**

Plaintiffs' counsel presents no evidence about the undesirability of the case. While one arguably could consider the engagement undesirable due to the risk of a contingency fee, the

court already has factored this consideration into its analysis of factor (4) above. So, this factor is neutral.

### (11) Nature and Length of the Professional Relationship with the Client

Plaintiffs' counsel presents no evidence about the nature and length of the professional relationship. As this court has explained, "[t]he meaning of this factor . . . and its effect on the calculation of a reasonable fee has always been unclear, and courts applying the *Johnson* factors typically state that this particular standard is irrelevant or immaterial." *Barbosa*, 2015 WL 4920292, at *12 (citing *Bruner*, 2009 WL 2058762, at *9 (further citation omitted)). This factor is immaterial to the appropriate analysis here.

### (12) Awards in Similar Cases

Plaintiffs' counsel asserts that the requested fee is "modest." Doc. 55 at 25. Plaintiffs' counsel cites two cases from our court to back up this assertion: *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *9 (D. Kan. Nov. 29, 2012), where the court awarded attorneys' fees of $3,209,926, and *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *9 (D. Kan. July 13, 2016), where the court awarded attorneys' fees of $1,650,000. However, merely citing the amount of the attorneys' fees is not convincing. Plaintiffs ignore the relevant facts of each case. In *Koehler*, while the attorneys' fees were more than ten times the requested fees in this case, the fees represented a much smaller percentage of the Gross Settlement Fund; the $1,650,000 fee award was just one third of the Gross Settlement Fund. *Koehler*, 2016 WL 3743098, at *2, 9. *Garcia* differs from this case as well. *Garcia* went to trial and plaintiffs' attorneys secured a verdict against defendant. 2012 WL 5985561, at *1. Thus, the jury decided the class award for violations of the FLSA and KWPA, and the court approved requested attorneys' fees. *Id.* at *1, 9. When the attorneys' fees do not come from the

same fund as the class reward (as is the case with a settlement like this one), it is more reasonable to award the attorney's lodestar without considering the percentage of the FLSA award. Overall, this case is more like *Koehler* than *Garcia*. So, a similar award would represent one third of the Gross Settlement Fund—not the near 60% plaintiffs' counsel seeks here. This factor weighs against approval of the fee award.

Considering the *Johnson* factors in full, the court finds that plaintiffs' counsel has not established that the requested attorneys' fees are reasonable. The court thus cannot approve the proposed attorneys' fees here. Also, the court doesn't have enough information before it to approve the requested $17,500 award for costs. Plaintiffs provide no explanation how counsel expended the $2,500. Indeed, their motion recites this figure, but counsel's supporting declaration says that counsel has incurred $2,317.18 in expenses to date. Doc. 55-3 at 3 (Declaration ¶ 14). Also, counsel estimates that $15,000 is required for settlement administration fees but provides no justification for that amount in their motion. However, counsel asserts, to the extent these costs are less than the requested amount, counsel will reapportion any remaining amount to the Net Settlement Amount. *Id.*

Under these facts, the court cannot approve the requested award for fees and costs. If the parties wish to reapply to the court for an award of fees and costs, they must reduce the proposed attorneys' fees to an amount that conforms to the standards described and provide more justification for their request for costs. Otherwise, the court will reduce the attorneys' fees and cost award to an amount it determines fair and reasonable before it will approve the settlement.

In sum, the court finds that there is a bona fide dispute, but it can't conclude that the FLSA settlement is fair and reasonable. For the above reasons, the court grants the motion to

certify the collective class for notice purposes but denies preliminary approval of the settlement for the FLSA claims.

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion for Preliminary Settlement Approval (Doc. 54) is granted in part and denied in part.  The court grants class certification under Rule 23 and approves preliminarily the parties' settlement of their KWPA claims.  The court also directs the parties to provide notice to the class members consistent with this Order.  And, the court adopts a schedule for the parties to provide notice, for class members to opt-out or object, and for the parties to seek final approval of their KWPA settlement.  Also, the court certifies a collective action under the FLSA, but it denies preliminary approval of plaintiffs' FLSA settlement.

**IT IS SO ORDERED.**

**Dated this 11th day of August, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
