## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MARGARET FLERLAGE &**
**MARKUS MURRAY,**
**individually, and on behalf of all others**
**similarly situated,**

                              **Plaintiffs,**          **Civ. No.: 2:18-cv-02614-DDC-TJJ**

**v.**

**US FOODS, INC.,**

                              **Defendant.**

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL AND SUGGESTIONS IN SUPPORT THEREOF

## Contents

I.      INTRODUCTION ....................................................................................................................1

II.     SUMMARY OF THE CASE AND SETTLEMENT ...........................................................3

III.    ADMINISTRATION OF THE NOTICE ...........................................................................5

   A.   Contents of the Notice ..........................................................................................................6

B.     Distribution of the Notice .....................................................................................................6

IV.     ARGUMENT.........................................................................................................................8

   A.   Approval of the Opt-Out Class Settlement. ..........................................................................8

      1.   The Settlement is Fair, Reasonable, and Adequate...........................................................9

      a.   The Proposed Settlement was Fairly and Honestly Negotiated .....................................10

      b.   Serious Question of Law and Fact Exist........................................................................11

      c.   The Value of An Immediate Recovery Outweighs Potential Future Relief...................12

      d.   All Parties Favor the Settlement....................................................................................12

B.     Approval of the FLSA Class Settlement and Final Certification of the Settlement Class. ..........14

      e.   The Customary Fee.......................................................................................................23

      f.   Whether the Fee is Fixed or Contingent .......................................................................23

      g.   Time Limitations Imposed by the Client or the Circumstances.....................................24

      h.   The Amount Involved and the Results Obtained ...........................................................24

      i.   The Experience, Reputation, and Ability of the Attorneys ............................................25

      j.   The "Undesirability" of the Case ..................................................................................25

      k.   The Nature and the Length of the Professional Relationship with the Client ................25

      l.   Awards in Similar Cases ...............................................................................................26

V.      CONCLUSION ...................................................................................................................28

**Exhibit List**

**Ex. A –** November 20, 2020 Simpluris Weekly Report
**Ex. B** - Proposed Final Approval Order

## I.    INTRODUCTION

On February 7, 2020, the Parties moved the Court for preliminary settlement approval. On August 11, 2020, the Court issued an Order granting class certification under Rule 23; preliminarily approving the parties' settlement of the KWPA claims; directing the parties to provide class notice to the class members; and adopting a schedule for the parties to provide notice, for class members to opt-out or object, and for the parties to seek final approval of their KWPA settlement. (Doc. 56). The court also certified the collective class for notice purposes but declined to approve the settlement for the Fair Labor Standards Act ("FLSA") claims because it determined the requested service awards and attorney fees and costs were unreasonable. *Id.* On August 27, 2020, Defendant filed an *Unopposed Motion Regarding Revised Amounts for Attorneys' Fees, Costs, and Representative Plaintiffs Service Awards, to Preliminarily Approve FLSA Settlement, and to Approve Amended Notice to Class* (Doc. 58), seeking approval of reduced service awards, attorneys' fees and costs. On October 28, 2020, the Court granted the motion, preliminarily approving the Parties' FLSA settlement and conditionally approving the Amended Notice to the Class. (Doc. 59). The Court concluded the settlement "involves a bona fide dispute." *Id.* Furthermore, the Court concluded that the "parties' proposed FLSA settlement is fair and equitable to all parties, and that the proposed settlement contains awards of reasonable attorneys' fees, costs, and incentive awards." *Id.* Nothing has happened to alter this finding.

Following the Court's August 11, 2020 order, the Parties utilized a third-party administrator, Simpluris, Inc. ("Simpluris" or "Administrator"), to distribute the Class Notice to the Class and Collective Members (jointly referred to as "Settlement Classes"). The Court-approved notice was mailed to 426 members of the Settlement Classes. The deadline to opt out of the settlement and/or to object to the settlement was November 13, 2020. (Doc. 58-1 at pp. 4-5). All members of the Settlement Classes were advised in their notices of the estimated amount they would receive under the settlement. *Id.* at p. 3. All members of the Settlement Classes were also informed that the

settlement fund of Two-Hundred and Ten-Thousand Dollars and No Cents ($210,000.00) would be allocated as follows: (1) Net Settlement Proceeds eligible for distribution among the Settlement Classes in the amount of at least One-Hundred Thirteen Thousand Five Dollars and Eighty-Two Cents ($113,005.82); (2) Class Counsel would receive attorneys' fees of no more than Eighty-Four Thousand Dollars and no cents ($84,000.00) under the settlement; (3) representative plaintiffs Markus Murray and Margaret Flerlage would receive service awards of no more than Nine Hundred Twenty Dollars and no cents ($920.00) for Mr. Murray and Six Hundred Eighty Dollars and no cents ($680.00) for Ms. Flerlage; and (4) costs incurred of no more than Eleven Thousand Three-Hundred Ninety-Four Dollars and Eighteen Cents ($11,394.18). *Id.* at p. 2. The proposed settlement has been well received by the class members, no class members objected to the settlement and no class members opted out.

Upon final approval, the net settlement proceeds will flow directly to all participating class members without any further reduction for attorneys' fees, costs or settlement administration expenses. This is money these class members would never have received but for this lawsuit. The Settlement Agreement does not require any affirmative act in order to receive a settlement check. *Settlement Agreement*, ¶ 50 (Doc #55-1); (Doc. 58-1). In accordance with the FLSA, members of the Collective Class will opt-in to the Settlement by endorsing and cashing their settlement checks. *Settlement Agreement*, ¶ 57(b). Unless an individual submitted their written intent to opt-out of the settlement, they will be sent the settlement proceeds to which they are entitled and may then decide whether to accept the funds and release their FLSA claims. *Id.* The Parties expect that an extraordinarily high number of the putative Settlement Class members will participate in the Settlement and very little of the funds will revert to the Defendant. This expectation is bolstered by the fact that none of the putative Settlement Class members have affirmatively opted-out of the Settlement, an option that was expressed to the Settlement Class members in the Court-approved notice. *See November 20, 2020 Simpluris Weekly Report* ("Administrator Report") (Ex. A).

This settlement provides exceptional relief now, without the additional risk and expense of continued litigation, trial, and appeal.  Accordingly, Plaintiffs now move for the Court to enter the accompanying Proposed Final Approval Order (Ex. B) ("Proposed Final Order") fully resolving this matter. The accompanying Proposed Final Order (Ex. B): (1) finally certifies the Rule 23 and FLSA Settlement Classes for purposes of this settlement, (2) finds that the Settlement Agreement is fair, reasonable, and adequate for the purposes of Rule 23 and the FLSA, (3) orders that Settlement Class members receive their award in accordance with the Settlement Agreement,  and (4) orders that the Rule 23 Class be bound by the release of claims contemplated by the Settlement Agreement and that the Collective Class be bound with respect to their FLSA claims upon the endorsement, deposit, or cashing of their settlement checks.

## II.    SUMMARY OF THE CASE AND SETTLEMENT

On November 15, 2018, named Plaintiffs Margaret Flerlage and Markus Murray ("Plaintiffs") filed, collectively and as a class action, claims against defendant US Foods, Inc. ("Defendant") for: (1) violations of the Fair Labor Standards Act ("FLSA"); and (2) violations of the Kansas Wage Payment Act ("KWPA").[1] These claims arose out of the allegations that Defendant failed to pay Plaintiffs, and others similarly situated, for hours and regular and overtime pay in accordance with state and federal law. Plaintiffs alleged that, *inter alia*, they, and others similarly situated, were required to perform work that was integral and indispensable to their principal activities without compensation before they "clocked in" for work.

On February 6, 2019, Defendant filed an amended answer, denying all liability and asserting 14 affirmative defenses. Thereafter, the parties exchanged initial disclosures, interrogatories, and requests for production. On May 23rd and 24th of 2019, Defendant deposed both Plaintiffs. On

---

[1] Plaintiffs amended their complaint on January 22, 2019.

August 29, 2019, the parties attended mediation with Michelle Minor, an experienced mediator with over 22 years of experience mediating these types of cases. The Parties vigorously negotiated their respective legal positions, culminating in the settlement agreement that was presented to this Court for preliminary approval and which was ultimately preliminarily approved. The preliminarily approved Settlement Agreement represents the resolution of a bona fide dispute among the Parties that will provide closure for all class members and for the Defendant. The Parties agree that the terms of the Settlement Agreement are fair, reasonable, and that the agreement should be approved by the Court in this matter.

The Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit and that the evidence developed to date supports the claims asserted. Plaintiffs and Class Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the settlement confers substantial and meaningful benefits upon the members of the settlement class now. Defendant adamantly denies that Plaintiffs' claims have any merit and denies any wrongdoing but wishes to avoid the uncertainty, risk, and business disruption associated with further litigation.

The Settlement preliminarily approved of by the Court calls for the Defendant to pay the mediator's fees and an all-cash amount known as the Gross Settlement Amount ("GSA") of Two Hundred Ten Thousand Dollars and Zero Cents ($210,000.00) in full and complete settlement of the action. *Settlement Agreement*, ¶ 20 (Doc. 55-1). The GSA is a common fund that will pay out Settlement Class member settlement awards, Plaintiffs' reasonable attorney fees and expenses, claims administration costs, penalties and interest, and representative service awards for Plaintiffs. *Id.*

The main terms of the settlement are as follows:

- The Settlement creates and makes available a common fund of $210,000.00, including attorneys' fees and costs, to settle the claims of the approximately 426 class members;

▪ Detailed notices were provided to class members after preliminary approval of the settlement apprising class members of, among other things:

  ○ their estimated individual settlement amounts,
  ○ their right to opt out of the settlement if they so wish,
  ○ the procedure for claiming monies and/or objecting to the settlement;
  ○ and all other rights affected by the proposed settlement.

▪ Each Class Member who does not request to be excluded or opt out of the Settlement releases Defendant from (A) any and all claims, known or unknown, the Class Member may have against Defendant that were or could have been asserted based on any of the facts and allegations asserted in the Amended Complaint or Original Complaint, or any subsequently filed amended Complaints, including (1) any and all claims for any contract theory of liability including breach of contract, (2) quantum meruit, (3) unjust enrichment, (4) all claims for wages, minimum wages, straight time  wages, overtime pay, meal or rest breaks, and (5) any and all claims under any state (including the KWPA), federal (including the FLSA), or local law; (B) all claims for wages or compensation due for services; and (C) all claims that are based on or relate to the purported payment or non-payment of compensation (including but not limited to wages and overtime (including the calculations thereof)), or meal period or rest break violations;

▪ Each Class Member who timely endorses, negotiates, or cashes his or her settlement check releases and waives any and all claims under the FLSA;

▪ Attorneys' fees of no more than $125,000.00[2] to be paid to Plaintiffs' Counsel;

▪ Costs of no more than $17,500.00[3] to be paid to Plaintiffs' Counsel;

▪ Service Awards for Markus Murray and Margaret Flerlage not to exceed $5,000.00 each.[4]

The Joint Stipulation of Class Action and FLSA Settlement ("Settlement Agreement") was previously filed in this matter. (Doc. 55-1).

## III.    ADMINISTRATION OF THE NOTICE

Constitutional due process requires that absent class members receive the best notice

---

[2] The Court preliminarily approved reduced attorneys' fees of $84,000, which was communicated in the detailed notices provided to class members.. (Doc. 59).
[3] The Court preliminarily approved reduced costs of $11,394.18, which was communicated in the detailed notices provided to class members.. (Doc. 59).
[4] The Court preliminarily approved reduced service awards of $920.00 for Markus Murray and $680.00 for Margaret Flerlage, which was communicated in the detailed notices provided to class members. (Doc. 59).

practicable, reasonably calculated to inform them of the pendency of the action and affording them the opportunity to object. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); Fed. R. Civ. P. 23(c)(2)(B). However, as to the mechanics of the process, "[c]ourts retain discretion over the content and form of notice." *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *25 (D. Kan. June 4, 2018) (quoting *Gottlieb v. Wiles*, 11 F.3d at 1013 (10th Cir. 1993)).

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).

### A.   Contents of the Notice

In ruling on the Parties' preliminary settlement approval motion, this Court already evaluated the notice. This Court approved the parties' proposed notice with one exception. Doc. 56 at 15. The Court instructed the parties to revise the portion of the notice referring to service fee awards and attorneys' fee award by providing a revised proposed service fee award and attorneys' fee award and noting that these amounts are still subject to the Court's approval. Doc. 56 at 15-16. On October 28, 2020, the Court approved the parties' revised notice (Doc. 58-1), reflecting reduced service awards and attorneys' fees. Doc. 59 at 10. Accordingly, this Court already held that the content of the notice constituted the best notice practicable under the circumstances and satisfied all procedural due process requirements.

### B.   Distribution of the Notice

Similarly, in its Order granting preliminary settlement approval, the Court approved the

Agreement's proposed method for disseminating the notice, directing "the parties to send notice to settlement class members in the form and manner proposed by the parties . . . and adopt[ing] the parties' schedule for settlement and related deadlines." Doc. 56 at 16-17. The Parties have now disseminated the notices as directed, which was overseen by the Administrator. *See* Administrator Report (Ex. A).

In its order granting preliminary approval to the parties' Settlement Agreement, the Court approved of the following timeline for the resolution of this matter:[5]

| Event | Deadline |
|---|---|
| Retention of Settlement Administrator | 7 Days After Preliminary Approval of Settlement (August 17, 2020) |
| Defendant to provide Third-Party Administrator with Confidential Class List and Work Weeks of Each Class Member | 20 Days After Preliminary Approval of Settlement (August 31, 2020) |
| **Notice Deadline** – Settlement Administrator must send notice to class members | 14 Days After Settlement Administrator Receives Class List (September 14, 2020) |
| **Response Deadline** – Response Deadline for Class Members (opting out, disputing information, and objecting) | 60 Days After Notice of Settlement is Mailed (November 13, 2020) |
| Motion for Final Approval | 30 Days After Response Deadline Expires (December 14, 2020) |
| Settlement Approval Hearing | February 4, 2021 at 9AM |

Other than a one-day delay in mailing the notice to class members which necessitated a one-day delay in the response deadline, the Parties, along with the Administrator, implemented the above schedule in accordance with the Court's order, including issuing the approved Class Notices to the 426 putative Settlement Class members. *Id.*

The notice procedure negotiated by the Parties was designed to ensure that a high percentage of claims are paid, rather than being returned to the Defendant without a recovery to the putative

---

[5] The Court approved of other ancillary deadlines (not included in the below table) requested in Plaintiffs' *Memorandum to Plaintiffs' Unopposed Motion for Preliminary Settlement Approval* preceding Plaintiffs' motion for final approval, but declined to make any order regarding scheduling past the point of Plaintiffs' motion for final approval.

Settlement Class members. The Settlement Agreement does not require any affirmative act in order to receive a settlement check. *Settlement Agreement*, ¶ 50 (Doc #55-1); *Class Notice* (Doc. 58-1).

Of the 426 Class Notices, 86 were returned. *Administrator Report* (Ex. A). The third-party administrator used a skip trace to locate each individual whose notice was returned as undeliverable without a forwarding address and was able to locate updated addresses and re-mail 73 of the returned notices. See *Id.* Of the notices that were re-mailed, 12 were returned as undeliverable. *Id.*

The notices provided instructions on how class members could object to the settlement. Doc. 58-1. The Administrator did not receive any objections to the settlement. *Administrator Report* (Ex. A). The notice also provided instructions on how class members could exclude themselves from the settlement. Doc. 58-1. No exclusions were received. *Administrator Report* (Ex. A). In sum, out of the 426 Class Members who were mailed notices, 0 have opted out, 25 were undeliverable, and 0 objected. *Id.* The participation in the Settlement is therefore expected to be high and opposition to the settlement is non-existent.

The Parties' notice plan, which this Court approved, and the Administrator implemented, constituted the best notice practicable to inform the class members of their rights and options under the settlement.

## IV.   ARGUMENT

### A. Approval of the Opt-Out Class Settlement.

Rule 23(e) requires a court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, the Court considers the "settlement agreement, taken as a whole. . ." **In re Dep't of Energy Stripper Well Exemption Litig.**, 653 F. Supp. 108, 116 (D. Kan. 1986).

With respect to a Rule 23 class settlement, "[t]he settlement approval process typically occurs

in two phases. First, the court considers whether preliminary approval of the settlement is appropriate." William B. Rubenstein, **Newberg on Class Actions** § 13:10 (5th ed.). "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *Tripp v. Berman & Rabin, P.A.*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, at *5 (D. Kan. July 6, 2016) (quoting *Freebird, Inc. v. Merit Energy Co*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *4 (D. Kan. Dec. 6, 2012)). The first step was completed on August 11, 2020 when the Court granted preliminary approval of the settlement and ordered notice distributed to the class.

In this second, final step, the Court again determines whether the settlement is fair, reasonable, and adequate, "taking account of all of the information learned during [the notice] process, the court decides whether or not to give 'final approval' to the settlement." *Tripp* at *5-6 (quoting **Newberg on Class Actions** § 13:10). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012). Having provided the notice pursuant to the Court-approved plan, and receiving no Class Member objections, the Plaintiffs request that the Court grant final approval of the settlement.

### 1.    The Settlement is Fair, Reasonable, and Adequate.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." **Newberg on Class Actions** § 11.41. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Harlow v. Sprint Nextel Corp*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018) (quoting *Marcus v. Kansas Dep't of Rev.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)). Further "[t]he law favors compromise and settlement of class action suits." *Geiger v. Sisters of*

9

*Charity of Leavenworth Health Sys.*, No. 14-2378, 2015 U.S. Dist. LEXIS 97362, at *5 (D. Kan. July 27, 2015); *see also* **Petrovic v. Amoco Oil Co.**, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." **Cohn v. Nelson**, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting **In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.**, 55 F.3d 768, 784 (3d Cir. 1995)).

"The Tenth Circuit has set forth four non-exclusive factors which this court must consider in evaluating whether the proposed settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." **In re Sprint Corp. ERISA Litig.**, 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006) (quoting **Rutter & Wilbanks Corp. v. Shell Oil Co.**, 314 F.3d 1180, 1188 (10th Cir. 2002)). These factors weigh in favor of finding the final settlement fair, reasonable, and adequate in this case.

### a. The Proposed Settlement was Fairly and Honestly Negotiated

There is no indication or evidence of fraud or collusion in the settlement. Indeed, this case has been diligently prosecuted and defended throughout the litigation. The Settlement in this matter was fairly and honestly negotiated. It was reached, in large part, due to the efforts and experience of mediator Michelle Minor. At the time of the mediation, the parties had been litigating this dispute for nearly 10 months. During that time, the parties had exchanged initial disclosures, interrogatories, requests for production, and conducted depositions. By the time of the mediation, the parties had ample time to assess the strengths and weaknesses of their cases. The litigation was at all times hard-

fought, and the negotiations were likewise hard-fought and at arm's-length. Further, in Plaintiffs' Counsel's experience, when compared with similar litigation, the relief to the class is consistent with other settlements which have been approved at this stage of litigation.

### b. Serious Questions of Law and Fact Exist

There are serious questions of law and fact that place the ultimate outcome of this litigation in doubt. In Plaintiffs' Counsel's view, the settlement provides substantial and meaningful benefits to the class, especially when one considers the attendant expense, risks, difficulties, delays, and uncertainties of litigation. After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of Plaintiffs' claims and Defendant's defenses. Consequently, the Parties had sufficient knowledge to make an informed assessment on the merits of the litigation. Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate based on their knowledge of the case, applicable law, and their experience in similar actions.

The Parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the Parties' assessments of the worst-case and best-case scenarios; weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification and full recovery on the merits. Plaintiffs' worst-case scenarios are numerous, including: (1) the class is decertified after preliminary certification; (2) summary judgment is granted to Defendant; (3) Plaintiffs lose at trial; or (4) even if the Plaintiffs prevail at trial, Defendant appeals, and the appellate court overturns the grant of certification or the award of damages. In short, the result is not assured for either side. The details of the settlement involved extensive negotiation and compromise. This reflects the Parties' zealous representations of their respective positions on the claims and defenses in this case. This Settlement likewise reflects the difficulties, costs, and risks to both parties associated with protracted litigation.

Even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each

Settlement Class member to recover for alleged unpaid straight time and overtime. Such questions would involve substantial calculations. Although Plaintiffs strongly believe in the merits of their claims, these uncertainties make it extremely difficult to predict how a jury would ultimately view this case.

### c. The Value of An Immediate Recovery Outweighs Potential Future Relief

The Settlement ensures Class Members a certain, immediate, and proportional recovery for their alleged injuries as opposed to a speculative, protracted, and uncertain recovery. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation and weighs in favor of approving the Settlement. The benefits to the Settlement Class of immediate and certain recovery cannot be overstated in this case. The Settlement therefore represents an efficient and equitable resolution to the conflicts in this litigation.

### d. All Parties Favor the Settlement.

The final factor asks whether the parties deem the settlement fair and reasonable. *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018). When a court is evaluating a proposed settlement that "is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . . " and that "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)

Here, Plaintiff and members of the Settlement Classes had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. *See Osman Declaration* (Doc. 55-3). Likewise, Defendant also retained experienced counsel that could successfully navigate complex litigation in the wage and hour context and have negotiated many such settlements. *Id.*

The negotiations were hard-fought and at arm's-length. In Plaintiffs' Counsel's view, the settlement provides substantial and meaningful benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, uncertainties of litigation, trial, and post-trial proceedings. *Id.* Specifically, participants in the settlement are expected to receive compensation for approximately 13 minutes of unpaid work each week, representing a reasonable compromise given the risk attendant with continued litigation. Such an amount reflects a realistic settlement value of this case during this stage of litigation. The sum is reasonable considering the further expense associated with litigating this action in the event that the matter did not to settle. If the litigation were to continue, Plaintiffs, Defendant, and the Court would all face the prospect of dealing with further costly discovery, motions for summary judgment, disputes over class certification, factual disputes relating to the quantity and value of uncompensated time, overtime calculations, and many other attendant difficulties. As is often the case in such complicated litigation, no result is certain. The immediate value conferred by settlement to Plaintiffs' Class strongly outweighs the speculative recovery of uncertain value in the future.

The reaction of the members of the Settlement Classes has been unanimously supportive of the settlement. As noted above, of the approximately 426 members of the Settlement Classes receiving notice of the settlement, not one individual filed an objection, and not one individual opted-out. The opinions of class members, expressed through objections, opt-outs, and silence, represent the most important "new" information available at the court's final, rather than preliminary, settlement assessment stage. To be sure, final approval may be warranted even where a percentage of class members object to or opt-out of a settlement. *See **Rutter & Wilbanks Corp. v. Shell Oil Co.**,* 314 F.3d 1180, 1189 (10th Cir. 2002) (ruling that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate).

13

But where, as here, no class members have objected, final approval is eminently appropriate. *See* ***McClean v. Health Sys., Inc.***, No. 6:11-CV-03037, 2015 WL 12426091, at *6 ("No Class Member filed an objection to this settlement, and only fourteen individuals opted out (.04% of the Class). This lack of opposition clearly supports approval."). The fact that no members of the Settlement Classes have objected to any term of the proposed settlement and not one has opted out, weighs heavily in favor of final settlement approval.

In sum, the settlement brings certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and evolving legal issues. ***Id.*** ¶ 16. While both sides believe the facts support their respective positions, Plaintiffs and Defendant reached this proposed compromise after extended settlement discussions facilitated by a well-regarded mediator. Plaintiffs therefore request that the Court grant final approval of the settlement.

### B. Approval of the FLSA Class Settlement and Final Certification of the Settlement Class.

#### 1. The Court Should Approve the Settlement as a Reasonable Resolution of a Bona Fide Dispute

The court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. Pursuant to the law within this district, the court should first determine that the settlement was the product of a bona fide dispute. ***Tommey v. Computer Scis. Corp.***, No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at *2 (D. Kan. Apr. 13, 2015) (citing ***Peterson v. Mortg. Sources, Corp.***, 2011 U.S. Dist. LEXIS 95523, at *4 (D. Kan. Aug. 25, 2011)). Second, the Court should determine whether the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute over FLSA coverage. ***Id.*** (citing ***Peterson*** at *4). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . ." and "[c]ounsels' judgment as to the fairness of the agreement

is entitled to considerable weight." *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182-83 (D. Kan. 2002).  Upon determination that the settlement of a bona fide dispute is fair and reasonable, the Court may enter a stipulated judgment. *Peterson* at 17. Additionally, courts that have conditionally certified collective actions, such as the one in this case, must make some final class certification finding before approving of the settlement. Further, FLSA settlements must also contain an award of attorneys' fees. *Id.* at 18; see also 29 U.S.C. § 216(b). Plaintiffs respectfully submit that this Court should conclude that the Parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation.

### a.   This Settlement Represents the Resolution of a Bona Fide Dispute

First, this settlement represents the resolution of a *bona fide* dispute, as the Agreement came only after a vigorously contested mediation. To meet the obligation of demonstrating a bona fide dispute, the parties seeking approval of a settlement must provide the following information: 1) a description of the nature of the dispute; 2) a description of the employer's business and the type of work performed by the employees; 3) the employer's reasons for disputing employees' right to overtime; 4) the employees' justification for the disputed wages; and 5) if the wage computation is disputed, each party's estimation of the total hours worked and the applicable wage. *Tommey v. Computer Scis. Corp.*, No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at *5-6 (D. Kan. Apr. 13, 2015).

As previously stated, named Plaintiffs Margaret Flerlage and Markus Murray ("Plaintiffs") filed, collectively and as a class action, a claim against defendant US Foods, Inc. ("Defendant") for: (1) violations of the Fair Labor Standards Act ("FLSA"); and (2) violations of the Kansas Wage Payment Act ("KWPA"). These claims arose out of the allegations that Defendant failed to pay Plaintiffs, and others similarly situated, for hours and overtime in accordance with state and federal law. Plaintiffs alleged that, *inter alia*, they, and others similarly situated, were required to perform work that was integral and indispensable to their principal activities without compensation before they "clocked in" for work.

Defendant is "one of only two foodservice distributors with a national footprint in the United States." U.S. Foods Form 10-K, p. 2 (available at http://d18rn0p25nwr6d.cloudfront.net/CIK-0001665918/6fbc7b79-2de4-43a1-b358-a1bde8ad905d.pdf). Defendant is the "second largest foodservice distributor in the United States by annual sales" and supplies "approximately 250,000 customer locations nationwide." *Id.* "[A]s of December 30, 2017, [Defendant] had 25,355 employees, of which 25,053 were full-time employees." *Id.* Plaintiffs, and the class members are non-exempt, hourly employees who work or worked for Defendant as Order Selectors, or other positions with similar job titles, duties, and compensation structures, at Defendant's Topeka, Kansas location. Plaintiffs and the putative class members are/were required to select various products, place products on pallets, and prepare products for delivery.

Plaintiffs assert, *inter alia*, that Defendant mandated that they work off the clock for up to fifteen to twenty minutes before beginning their scheduled shift. According to the Plaintiffs, such work by the Plaintiffs included, *inter alia*: going to their lockers to obtain gloves and audio headset units; traveling to the dock to obtain pallets, batteries for their headsets, and self-propelled pallet jacks; inspecting the pallet jacks using pre-equipment checklists; informing technicians about any problems with the pallet jacks; and attending pre-shift meetings. On February 6, 2019, Defendant filed an amended answer, denying all liability and asserting 14 affirmative defenses. Doc 18.

The wage computation used for settlement is not disputed in this case and is the result of a hard-fought mediation and compromise. The Parties do not agree, however, as to the amount of off the clock time actually worked, if any, by Plaintiffs. Plaintiffs assert, *inter alia,* that Defendant mandated that they work off-the-clock for up to fifteen to twenty minutes before beginning their scheduled shift. According to the Plaintiffs such work by the Plaintiffs included, *inter alia*: going to their lockers to obtain gloves and audio headset units; traveling to the dock to obtain pallets, batteries for their headsets, and self-propelled pallet jacks; inspecting the pallet jacks using pre-equipment checklists;

informing technicians about any problems with the pallet jacks; and attending pre-shift meetings. Defendant denies that any off-the-clock work occurred so believes the damages should be zero.

If this litigation were to proceed to trial, the parties would undoubtedly face disputes over issues of both fact and law. The dispute is, therefore, bona fide. Only after a significant and intensive mediation, with the assistance of an experienced mediator, were the Parties able to reach the instant Settlement Agreement. There can be no doubt that this Agreement resolves a *bona fide* dispute between Plaintiffs and Defendant.

### b.  This Agreement is Fair and Reasonable

Second, the proposed settlement is fair and equitable to the parties concerned. To determine whether the proposed settlement is fair and equitable, the factors which courts consider in approving class action settlements under Rule 23(e) provide a general framework for the Court's determination. *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, at *18 (D. Kan. Jan. 5, 2011). As argued above, in section IV(A) of this memorandum, the Court should find that the settlement reached by the parties is both fair and reasonable.

"As courts have recognized, when considering settlement agreements, they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the "bird in the hand" instead of a "prospective flock in the bush" approach. **In re BankAmerica**, 210 F.R.D. at 701.  Accordingly, Plaintiffs requests that the Court approve the settlement and order that Plaintiff and participating class members be paid in accordance with the terms of the settlement and the Agreement.

### 2.  Final Certification of the Settlement Class is Appropriate

The Court should find that it is appropriate to approve of the final certification of this action as a collective action for settlement purposes only. When parties settle FLSA claims before the Court

has made a final certification ruling, the court must make some final class certification finding before it can approve a collective action settlement. *McCaffrey v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 1096, *12 (D. Kan. Jan. 5, 2011). "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 558 (9th Cir. 2019) *citing* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts ... regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns."). In FLSA cases, courts will generally address certification of a collective action at two different stages. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001). In the first stage, courts require a very low burden, looking at whether or not the plaintiff has made "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* During the second stage, which should be applied in this instance as this matter has already been conditionally certified, courts apply a stricter standard and review of several factors including (1) the disparate factual and employment settings of individual Plaintiffs; (2) various defenses available to Defendant which appear to be individual to each Plaintiffs; and (3) fairness and procedural considerations. *Id.* As discussed below, we address each of these factors to demonstrate that final certification of a collective action is appropriate for settlement purposes only.

The collective class proposed by the Settlement Agreement is substantively the same as the Rule 23 Class. It is defined as "all persons who are or were previously employed by Defendant as Order Selectors who worked at any time at Defendant's business location in Topeka, Kansas from November 15, 2015 until September 30, 2019." Settlement Agreement, ¶ 19 (Doc #55-1). Plaintiffs contend that the class plainly meets the requirement of 29 U.S.C. § 216(b) because all members are "similarly situated" for the purposes of settlement.

With respect to the first factor, Plaintiffs assert for settlement purposes that there are no

disparate factual and employment settings for individual class members. All members were Order Selectors working at the Topeka location. All members could legally bring an action for any allegations against the Defendant that they were required to work off the clock and were thus undercompensated by the Defendant. With respect to the second factor, for the purposes of settlement, there are no defenses known to Plaintiffs' Counsel that would be unique to members of the class. Finally, a review of fairness and procedural considerations demonstrates that treatment of this matter as a certified collective action for the purposes of settlement is appropriate. "Fairness and procedural considerations" – such as allowing plaintiffs to pool their resources for litigation – favor collective action treatment for the purposes of settlement. The Settlement Agreement makes provisions for fairness and procedural considerations by mandating that notice be sent to all putative Class Members, thereby allowing them the chance to opt-out or object to the settlement if they so desire and to not endorse, negotiate, or cash their settlement checks if they do wish to opt in to the FLSA collective. The mechanisms used will be sufficient to provide each Class Member with the benefits of the Settlement Agreement or the choice to retain their rights to bring individual suit. The Parties request that the Court finally certify the collective class for purposes of this Settlement.

### 3. The Court Should Approve the Requested Attorneys' Fees and Costs

Under the FLSA, Plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. *See* 29 U.S.C. § 216(b). Generally, "[t]he amount of the fee . . . must be determined on the facts of each case," and "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckhart*, 461 U.S. 424, 429, 433 (1983). As part of the settlement, Plaintiffs request Eighty-Four Thousand Dollars and No Cents ($84,000.00) as attorneys' fees and Eleven Thousand Three Hundred and Ninety-Four Dollars and Eighteen Cents ($11,394.18) as reimbursement for costs incurred in this action, which the Court preliminarily approved on October 28, 2020. Doc. 59. Defendants do not oppose such request.  Plaintiffs hereby respectively request that the Court issue an order granting final

approval of Plaintiffs' requested attorneys' fees and costs.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the Parties have done so because Defendant has agreed that it will not oppose Plaintiffs' request for such reasonable fees and costs. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g.,* *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In determining a reasonable attorney's fee in this Circuit, the Court "must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 95523, at *32 (D. Kan. Aug. 24, 2011) (the "Johnson Factors"). These factors are:

> (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

**Id** at 32-33.

### a. The Time and Labor Required

Plaintiffs' Counsel has expended a considerable amount of effort in investigating, filing, conducting discovery, and mediating this case. Plaintiffs' Counsel has spent over 609 hours working

on this case as of the time of their motion for preliminary approval of this settlement.[6] *Osman Declaration*, ¶¶ 19-20 (Doc. 55-3). Plaintiffs' counsel documents a lodestar of over $237,065.00. *Id.* at ¶ 20. The request for attorney's fees of $84,000 means Plaintiffs' Counsel is seeking an award of fees significantly less than their lodestar, resulting in a blended hourly rate of less than $138. A negative lodestar multiplier of 0.354 confirms the reasonableness of the fee award in light of the positive multipliers frequently awarded in the Tenth Circuit. *See, e.g., Cook v. Rockwell Int'l Corp.,* No. 90-cv-00181-JLK, 2017 U.S. Dist. LEXIS 181814, at *10, *16-17 & n.6 (D. Colo. April 28, 2017) (finding that "[t]ypical multipliers range from one to four depending on the facts, with many courts awarding multipliers larger than four on case-specific grounds" and collecting federal cases to support conclusion that "multiplier of 2.41 is within the range of those frequently awarded in common fund cases."); *Campbell v. C.R. Eng., Inc.,* No. 2:13-cv-00262, 2015 U.S. Dist. LEXIS 134235, at *20 n.5 (D. Utah Sept. 30, 2015) (finding "lodestar crosscheck calculation here results in multiplier of 2.9, which is within a reasonable range" of approved multipliers within the Tenth Circuit); *see also, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051-52 & n.6 (9th Cir. 2002) (affirming district court's fee award based on 3.65 lodestar multiplier and listing nationwide class action settlements from 1996-2001 approving multipliers ranging up to 8.5). The time, labor, and lodestar therefore support the reasonableness of the attorneys' fees sought.

### b.  The Novelty and Difficulty of the Questions Presented

This FLSA collective action presented a myriad of unique legal issues, considering this case was also pursued as a "hybrid" Rule 23 class action.  This case required a firm understanding of the "opt-in" FLSA mechanism and its implications which are distinct from the traditional Rule 23 opt-out class.  This hybrid class case also required a specialized familiarity with novel and complex

---

[6] Plaintiffs' Counsel's time reflects time incurred up to and through November 14, 2019. Plaintiffs' Counsel has continued to maintain contemporary time records through the date of this filing but has not increased the stated hours for purposes of the motions for preliminary or final approval.

procedural rules.  In terms of the specific allegations, calculation of class wide damages requires significant knowledge and experience to properly calculate and would take significant efforts to present in a coherent manner to a jury or fact-finder at trial. This factor supports Plaintiffs' application.

### c.  The Skill Requisite to Perform the Legal Service Properly

Courts in this Circuit have held that "wage and hour issues in [similar] litigation are governed by highly technical state and federal wage statutes and regulations" and that a Class Counsel who has litigated numerous cases under these laws would possess "the requisite skill to perform the legal service required in this complex litigation." ***Shaw v. Interthinx, Inc.***, Civil Action No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *16 (D. Colo. Apr. 21, 2015).  Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region and have successfully prosecuted many wage and hour actions both locally and nationwide. ***Osman Declaration*** (Doc. 55-3).  Due to Counsel's skill and experience, Parties were able to arrive at the present settlement.  Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region.  The hourly rates reflected are less than those charged by firms with comparable expertise in class actions and other complex litigation, and these rates are very reasonable when compared to those approved by courts in this region. ***Osman Declaration*** (Doc. 55-3). This factor supports Plaintiffs' application.

### d.  The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

As explained above, this case required a significant time commitment.  Given the complexity of wage and hour cases it is unsurprising that such cases take up a large amount of time and will naturally preclude attorneys from capitalizing on other opportunities. Plaintiffs' Counsel is a small law firm. Naturally, Plaintiffs' Counsel must be selective about the cases they take. The time, effort, and energy expended on this case, reflected above, precluded Plaintiffs' Counsel from taking on other promising cases. This factor supports their fee request.

22

### e.  The Customary Fee

Class Counsel typically only accepts contingency fee cases, and the rates charged in this case are customary to those they charge in other cases.  **Osman Declaration** (Doc. 55-3).  Furthermore, the effective hourly rate of less than $138 per hour is very reasonable compared with rates charged in the Kansas City area for similar types of lawsuits.  *See* **Missouri Lawyer's Weekly 2018 Billing Rates** (Ex. C) (listing Kansas City partner-level hourly rates in FLSA and class and collective action litigation ranging from $550 to $865 per hour); *see also* **Bruner v. Sprint/United Mgmt. Co.**, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at 23-25 (D. Kan. July 14, 2009) (finding a 2009 effective hourly rate of $590.91 high but acceptable for a "garden variety" FLSA case for an experienced litigator).  As such, there is no doubt the requested fees are reasonable given the skill required.432

### f.  Whether the Fee is Fixed or Contingent

Numerous cases have recognized that risk is an important factor in determining the fee award. *See, e.g.,* **In re Crocs, Inc. Sec. Litig.**, Civil Action No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *16 (D. Colo. Sep. 18, 2014) *(citing* **In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.**, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("the risk of receiving little or no recovery is a major factor in awarding attorney fees"); **In re Charter,** 2005 WL 4045741, *15 (finding that class actions "are by their nature, complex and difficult to prove."); **In re Continental Illinois Securities Litigation**, 962 F.2d 566, 569, 574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking).   Class Counsel undertook the representation of the class on a fully contingent basis and would recover no amount for expenses or time incurred unless the case succeeded.  **Osman Declaration** (Doc. 55-3).  It is well recognized that contingency representation ought to be compensated at a higher rate and is appropriately considered when assessing the hourly rates of plaintiffs' counsel. This factor weighs in favor of granting Plaintiffs' fee request.

### g.  Time Limitations Imposed by the Client or the Circumstances

This case did not present an unusually compressed time period; however, it is the nature of collective actions to incentivize resolutions as quickly as possible due to the manner that statutes of limitations expire until a putative class member joins the litigation.  Were Plaintiffs' Counsel to take an extra day to litigate or file, that extra day would result in a diminished award of one day for whoever's consent to join was thereby delayed.  As such, the inherent nature of time limitations in an FLSA case argue for fee approval.  This factor supports Plaintiffs' application.

### h.  The Amount Involved and the Results Obtained

The amount involved, and the results obtained are consistent with the requested attorneys' fees. Class Members are expected to receive a guaranteed payment rather than a speculative possibility of recovery only upon the conclusion of successful litigation. They are expected to receive compensation for approximately 13 minutes of unpaid work each week, representing a reasonable compromise given the risk attendant with continued litigation. Such an amount reflects a realistic settlement value of this case during this stage of litigation. The sum is reasonable considering the further expense associated with litigating this action in the event that the matter did not settle. If the litigation were to continue, Plaintiffs, Defendant, and the Court would all face the prospect of dealing with further costly discovery, motions for summary judgment, disputes over class certification, factual disputes relating to the quantity and value of uncompensated time, overtime calculations, and many other attendant difficulties. As is often the case in such complicated litigation, no result is certain. The immediate value conferred by settlement to Plaintiffs' Class strongly outweighs the speculative recovery of uncertain value in the future. Importantly, the settlement has been well received by the members of the settlement class.  After receiving their Court-approved notice, not one class member has objected to the terms of the settlement, and not one has opted out.  This factor therefore argues in favor of fee approval.

### i. The Experience, Reputation, and Ability of the Attorneys

Plaintiffs' Counsel has represented over 2,700 employees against their employers and have recovered over $15.4 million on behalf of plaintiffs. Plaintiffs' Counsel has handled multi-million-dollar FLSA cases. As such, Plaintiffs' Counsel has a high level of experience litigating these types of cases. Plaintiffs' Counsel utilized their experience to deliver a quality settlement to Plaintiffs' Class.

### j. The "Undesirability" of the Case

The time and financial resources required to litigate a "hybrid" FLSA collective and Rule 23 class action case such as this, involving hundreds of potential class members, make this case particularly undesirable to most plaintiff's attorneys in the market. ***Osman Declaration***, ¶ 26 (Ex. B). This factor supports Plaintiffs' fee request.

### k. The Nature and the Length of the Professional Relationship with the Client

Class Counsel spent many hours discussing the claims in this case with the named Plaintiffs. While Plaintiffs' Counsel's relationship with the Representative Plaintiffs is significant, it is not one in which other business is likely to be obtained. Plaintiffs, in the context of an FLSA collective action are rarely longstanding clients of Plaintiffs' Counsel. It is Plaintiffs' Counsel's hope that this process will serve as a valuable lesson to the Collective Action Members about their rights to compensation pursuant to the FLSA. As a result of this increased knowledge, it is possible for the FLSA Collective Class Members to refuse employment that would result in future violations of their rights and therefore, they may never require the services of Plaintiffs' Counsel again. While Plaintiffs' Counsel certainly hopes they will be contacted in the future for any legal claims on behalf of the FLSA Collective Class Members, it is unlikely that those individuals will remain Plaintiffs' Counsel's clients because Plaintiff's Counsel focuses its practice on representing employees and does not generally handle other legal matters.

### 1. Awards in Similar Cases

Finally, an award of the attorneys' fees sought in this case is modest and not unusual when compared with other similar awards given in FLSA cases. *See, e.g., Garcia v. Tyson Foods, Inc.,* No. 06-2198-JTM, 2012 U.S. Dist. LEXIS 170177, at *21 (D. Kan. Nov. 29, 2012) (attorney fees of $3,209,926); *Koehler v. Freightquote.com, Inc.,* No. 12-2505-DDC-GLR, 2016 U.S. Dist. LEXIS 91745, at *27 (D. Kan. July 13, 2016) (awarding attorneys' fees of $1,650,000); *Wales v. Jack M. Berry, Inc.,* 192 F. Supp. 2d 1313 (M.D. Fl. Dec. 21, 2001) (awarding attorneys' fees of $352,225.40, more than sixteen times the FLSA recovery of $21,000); *James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341 (S.D. Fl. May 14, 2007) (awarding attorneys' fees $114,021, more than thirty-two times the total judgment of $3,493.62).

Pursuant to the Fair Labor Standards Act, a prevailing party in such an action is entitled to recover all reasonably incurred attorneys' fees and costs. As the articulated criteria, the *Johnson* factors, weigh heavily for approval of the fee requested, it therefore is abundantly reasonable and should be approved. Plaintiffs, therefore, requests final approval of an attorneys' fees of $84,000.00 and costs of $11,394.18.

### 4. The Court Should Approve the Requested Service Awards.

The Court must examine any service awards to determine whether they are fair and reasonable. *Enegren v. KC Lodge Ventures, LLC,* No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *21 (D. Kan. Oct. 11, 2019). In the Court's order granting preliminary approval to the Parties' Settlement Agreement, the Court found that individual service awards for Plaintiffs Margaret Flerlage and Markus Murray were not fair or reasonable. (Doc. 56 at 21-22). Accordingly, Plaintiffs reduced the proposed service awards in this case to $920.00 for Mr. Murray and $680.00 for Ms. Flerlage. The Court preliminarily approved Plaintiffs' reduced service awards on October 28, 2020. (Doc. 59).

The reduced service awards are calculated to appropriately compensate Mr. Murray and Ms.

Flerlage for their contributions to the case, totaling 44-46 hours for Mr. Murray and 32-34 hours for Ms. Flerlage. The revised service awards directly align with the Court's $20 per hour standard, making the service awards sought in this case presumptively reasonable. *See* Doc. 56 at 22; *Foster v. Robert Brogden's Olathe Buick GMC, Inc.,* No. 17-2095-DDC-JPO, 2019 WL 10002046, at *19 (D. Kan. Feb. 28, 2019). The reduced service awards sought are well within the range of reasonable service awards approved by Kansas District Courts. *See, e.g., Enegren,* 2019 U.S. Dist. LEXIS 177192, at *21 ($5,000 service award); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at *5 (D. Kan. July 14, 2009) ($5,000 service award for 131 hours); *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) ($5,000 service award for 80 hours).

Additionally, the Court should approve this proposed service award because it is reasonable and warranted based on the actions that Ms. Flerlage and Mr. Murray took over the course of a year of litigation to protect and advance the interests of other similarly situated employees to whom a substantial benefit has been conferred under this settlement. *See Declaration of Margaret Flerlage* ("Flerlage Declaration") (Doc. 55-4); *Declaration of Markus Murray* ("Murray Declaration") (Doc. 55-5). Ms. Flerlage and Mr. Murray actively participated and assisted counsel in all phases of this litigation. This included working with counsel during the initial case investigation phase and the preparation of the original Complaint, assisting with initial Rule 26 disclosures, responding to written discovery, producing documents, and each attending a day-long deposition during discovery. *Flerlage Declaration* (Doc. 55-4); *Murray Declaration* (Doc. 55-5). With respect to case resolution, Plaintiff Mr. Murray attended the mediation with Michelle Minor. Both Plaintiffs routinely communicated with counsel with respect to the settlement of the case.

Ms. Flerlage and Mr. Murray have also agreed to give Defendant a broad general release of claims in consideration for their service awards. *Settlement Agreement*, ¶ 63 (Doc. 55-1). Additionally, both plaintiffs have taken a "reputational risk" by attaching their name to litigation against their

employer and could experience difficulty securing employment with future employers that learn of their involvement in such litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employer.") (approving incentive award of $10,000 to named plaintiff, plus additional $5,000 for broader release of claims).

In the Tenth Circuit's sister circuit, the 8th Circuit, service awards are often granted to named plaintiffs "to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (awarding a $10,000 service award). Indeed, in many courts, awards of well over $10,000 are not unusual. *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming incentive awards of $25,000 to each of the three named plaintiffs as compensation for their work and the benefit they conferred on the rest of the class); *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in wage-and-hour settlement after 2½ years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after 3 years of litigation).

The modest service awards sought by the Plaintiffs in this case should be readily approved by the Court.

## V.    CONCLUSION

For the reasons set forth above and in the supporting declarations and exhibits, the settlement presented is an immediate, real, substantial, and fair settlement, and Plaintiffs ask this Court to enter the accompanying Proposed Final Order (Ex. B), fully resolving this matter.

Dated:  December 14, 2020

Respectfully submitted,
OSMAN & SMAY LLP

/s/ Matthew E. Osman
Matthew E. Osman, KS Bar #23563
Kathryn S. Rickley, KS Bar #23211
8500 W. 110th Street, Suite 330
Overland Park, Kansas 66210
Telephone:      (913) 667-9243
Facsimile:      (866) 470-9243
mosman@workerwagerights.com
krickley@workerwagerights.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2020, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:     /s/ Matthew E. Osman
        ATTORNEY FOR PLAINTIFFS